JAMES MACK, Respondent, v. CHICAGO, ROCK IS-
LAND & PACIFIC RAILWAY COMPANY, Ap-
pellant.

**Kansas City Court of Appeals, January 14, 1907.**

1. **MASTER AND SERVANT: Method of Work: Negligence: Pub-
lic Policy.** The master has the right to conduct his own bus-
iness in his own way with such instrumentalities as he may
deem best, but this right gives no license to be negligent, since
society has an interest in the lives, limbs and health of indi-
viduals; and public policy will not permit a man to contract
away his right to protection from the negligence of another.

2. ———: ———: ———: **Assumption of Risk.** The assumption
of risk is contractual and disappears from view when neg-
ligence is the producing cause of the injury; and the only ques-
tions then are negligence and contributory negligence.

3. ———: ———: **Railroads: Running Trains: Handcars.** Rail-
roads must systematize their operations so that different
branches of their service will move along without friction with
one another; and they may determine how their trains shall
be run and fix schedules for belated trains and give them the
right of way, and trainmen may assume that operators of hand-
cars will keep out of their way, though they are charged with
the duty of keeping proper lookout for possible danger ahead;
and it is held that the trainmen in this case have discharged
their duty.

4. ———: ———: ———: ———: ———. The use of handcars
by section men is judicially recognized as proper though dan-
gerous, and vigilance is therefore required in their use; and
the evidence relating to the striking of a handcar by a follow-
ing train is reviewed and the foreman is held negligent in his
method of using the handcar and exposing his workmen to
danger and it was for the jury to say which one of the acts
was the producing cause of the accident.

5. ———: ———: ———: ———; ———: **Contributory Negli-
gence.** On the evidence it is held that the question of plain-
tiff's contributory negligence was for the jury.

6. ———: ———: ———: ———: ———: ———. A foreman on
a railroad track with workmen on a handcar is charged with
looking out for the safety of the men; while the workmen are
compelled to use prudence they are not on the same footing
with the foreman and are charged with other duties and may
rely upon the vigilance of the foreman; and the inequality of
position in this regard prevents the court from declaring as a

matter of law that what was negligence in the foreman would necessarily be negligence in the workmen.

7. DAMAGES: Personal Injury: Excessive Finding: Passion. A verdict for $1,500 for loss of time and suffering is held not to outrage conscience or produce the conviction that the verdict was not the product of fair judgment.

Appeal from Buchanan Circuit Court.—*Hon. Henry M. Ramey*, Judge.

AFFIRMED.

*Brown & Dolman* for appellant.

(1) Juries must necessarily determine the responsibility of individual conduct, but they cannot be allowed to set up a standard which shall in effect dictate the customs or control the business of the community. Chrismer v. Telephone Co., 194 Mo. 209, and cases cited. (2) "It is equally well settled that a master can conduct his business in his own way, and the servant, knowing the hazards of his employment as the business is conducted impliedly waives the right to compensation for injuries resulting from causes incident thereto, though a different method of conducting the business would have been less dangerous." Mathis v. Stock Yards Co., 185 Mo. 446; Minnier v. Railroad, 167 Mo. 113; Bradley v. Railroad, 138 Mo. 302; Blundell v. Manufacturing Co., 189 Mo. 558; Harrington v. Railroad, 104 Mo. App. 670; Beckman v. Anheuser-Busch, 98 Mo. App. 560; Olson v. Railroad, 38 Minn. 117; Larson v. Railroad, 43 Minn. 423; Naylor v. Railroad, 53 Wis. 664; Elliott v. Railroad, 150 U. S. 248; Loving v. Railroad, 128 Mo. 359; Fore v. Railroad, 114 Mo. App. 557. (3) And ordinarily section men and track men assume the risk incident to the running of trains, whether extra trains or trains running on schedule time. 3 Elliott on Railroads, sec. 1298; Hinz v. Railroad, 93 Wis. 16; Railroad v. Leech, 41 Ohio St. 388; Railroad v. Wachter, 60

Md. 395; Ring v. Railroad, 112 Mo. 230. (4) The court did instruct the jury "that the defendant had the right to run its trains over its track at all times, and that all persons being on the track are bound to take notice of such right and of the fact that it may be exercised at any time and to take such measures for their own protection and safety as are reasonably necessary under such circumstances." Concretely stated, it means that the law presumes that plaintiff knew that a train was liable to pass along the track at any time. (5) The foreman was guilty of no negligence in failing to warn plaintiff before putting on the brake. The circumstances were such as to call upon him to act before he could talk, and the court should have instructed the jury as requested in defendant's fifth instruction that there was no evidence of negligence in this respect. Dickson v. Railroad, 124 Mo. 151; Lee v. Railroad, 112 Mo. App. 409, and cases cited. (6) The damages awarded were so excessive as to bear no relation whatever to the injury. It is impossible to extract the elements of $1,500 damages from the admitted facts. Railroad v. O'Mara (Ky.), 76 S. W. 402; Sawyer v. Railroad, 37 Mo. 264; Haynes v. Trenton, 108 Mo. 134; Adams v. Railroad, 100 Mo. 569; Stoetzele v. Swearingen, 90 Mo. App. 593; Cook v. Railroad (Mo.), 68 S. W. 230; Taylor v. Railroad (Mo.), 84 S. W. 878; Railroad v. Gibson (Tex.), 79 S. W. 351; Bragg v. Railroad (Mo.), 91 S. W. 537.

*Brewster, Ferrell & Mayer* for respondent.

(1) The court committed no error in refusing defendant's demurrer offered at the close of all the evidence. (2) The question of contributory negligence was properly submitted to the jury. 2 Thomp. on Neg., 975; Stephens v. Railroad, 86 Mo. 229; Stephens v. Railroad, 96 Mo. 211. (3) The plaintiff did not assume the risk of dangers resulting from the negligence of defendant. Warren v. Railroad, 113 Mo. App. 498;

Schroeder v. Railroad, 108 Mo. 322. (4) The court committed no error in refusing defendant's instruction numbered 5. Schroeder v. Railroad, 108 Mo. 329. (5) The verdict is not excessive. Dimmett v. Railroad, 40 Mo: App. 658.

JOHNSON, J.—Plaintiff while employed by defendant as a section hand was injured by being thrown from a moving handcar and brought this action to recover the damages sustained, alleging that the injury was the direct result of defendant's negligence. He had judgment in the sum of $1,500 and defendant appealed.

Defendant contends that, under the facts in evidence most favorable to plaintiff, the action must fail and first we will determine the questions raised in support of that contention. Plaintiff was one of a number of laborers employed by defendant in repairing its track between Trenton and Altamont. A boarding camp was maintained by defendant at an intermediate point called Blake for the accommodation of these workmen. On the morning of the day of the injury, July 12, 1905, breakfast was served at about half past six o'clock, after which a gang of men, among them plaintiff, proceeded on four handcars to a point about four miles east of the camp where they engaged in work. A westbound passenger train was scheduled to pass Blake at thirty-five minutes past six o'clock, but on that morning it was late and was proceeding under orders to run five hours late, which would make it due at Blake at thirty-five minutes past eleven o'clock. The gang of laborers mentioned was in charge of a foreman, who directed all of its movements as well as those of the members thereof. At half past eleven o'clock, the foreman ordered his men to place the handcars on the track and run to camp for dinner. He took no precautions to ascertain if a train was approaching though he knew the belated passenger train then was past due, nor did he give any orders to

safeguard the passage of the handcars to camp. The
country over which they had to travel is broken and
uneven and the railroad contains many sharp curves and
runs through cuts and over fills the whole way. Plain-
tiff rode on the forward car with seven fellow-workmen
and the foreman. The latter attended to the brake and
the men supplied the motive power. Plaintiff and three
others were stationed at the forward handle. Being
crowded, they stood sidewise facing north, each with one
hand on the handle, moving their bodies up and down
as the handle moved. This position and motion were
maintained when the car rolled down grade by gravita-
tion, a thing it was doing at the time of the occurrence
in question. No stop was made in approaching curves
and the cars had covered perhaps half of the distance to
be traveled and the last one had just rounded a sharp
curve when the passenger train running over thirty miles
per hour suddenly appeared from behind. The rear hand-
car was overtaken and thrown from the track. Plaintiff
at first did not see the train, but the foreman did. Quick-
ly, and without warning, he applied the full force of the
brake and the speed of the car was checked so suddenly
and violently that plaintiff, surprised, was thrown for-
ward between the rails of the track. While lying pros-
trate, face downward, with his head towards the ad-
vancing car, a wheel connected with the gearing, which
projected downward from the middle of the body of the
car struck plaintiff at the base of his neck and passed
along his back to the hips. The car stopped with the
wheel resting on plaintiff's body. The men quickly re-
moved it and plaintiff crawled from the track just in
time to escape the oncoming train, which could not be
stopped until after it had passed the place of injury. De-
fendant introduced substantial evidence tending to show
that the whistle of the engine was repeatedly sounded and
the bell was kept ringing as the train ran along this sec-
tion of the track, but the evidence is overwhelming that

none of the men on the handcars heard these warnings, if they were given, and the sight of the engine was the first warning anyone had of its approach.

The specific acts of negligence pleaded in the petition involve the following acts of defendant: First, in giving the order to place the handcars on the track and run to camp in the face of knowledge that the past due passenger train was likely to appear at any moment. Second, In running the train in a manner to menace the safety of the laborers. Third, The failure of the foreman to send back a flagman to flag the train, should it appear, or to take any other precautionary measure to guard the safety of the men. Fourth, The act of the foreman in applying the brake without warning.

The defenses interposed are: First, That the facts adduced do not accuse defendant of negligence. Second, Plaintiff voluntarily assumed the risk of the injury inflicted; and Third, was guilty in law of contributory negligence.

First, we will consider the principles involved in the second defense. The rule that a master has the right to conduct his own business in his own way and may adopt such instrumentalities and follow such methods as he deems best suited to his business is restricted in its application by a very important qualification. He must always remain within the boundaries of reasonable care. In that scope, he is given full range and, though his methods may not be the best; the place he provides his servants the safest; or the tools and appliances with which he requires them to work the newest or most approved, he cannot be held liable for injurious consequences to his servants resulting from his conduct. In accepting employment, his servants are held in law to the implied agreement that they will perform his work in his way and with the means and instruments he provides and will not call him to account for injuries result-

ing from dangers incidental to the work as he conducts it.

But in this State the doctrine is fairly established that in accepting employment the servant does not assume the risk of injuries directly resulting from the master's negligence. The right to conduct his business in his own way does not give the master a license to be negligent. No human relation can give to one man the right to inflict an injury on another, either intentionally or negligently, nor may a man by contract, express or implied, relieve himself from liability for the direct consequences of his own wrongful act. As a necessary corollary, it follows that a servant neither by express nor implied contract is permitted to waive the right he has to the protection afforded by the exercise of reasonable care on the part of the master. Society has an interest to serve in the preservation of the lives, limbs and health of its individuals and an enlightened public policy will not tolerate the idea that a man may contract away a right so sacred and thus voluntarily offer his body as a sacrifice to positive wrong.

Assumption of risk, being essentially contractual, disappears from view when we find that negligence is the producing cause of the injury and such cases cannot involve as elemental other issues than those concerned with the negligence of the master and the contributory negligence of the servant. [Shore v. Bridge Co., 111 Mo. App. 278; Stafford v. Adams, 113 Mo. App. 717, and cases there cited.] A different view was taken by the St. Louis Court of Appeals in Lee v. Railway, 112 Mo. App. 372, but in the recent case of Obermeyer v. Chair M'fg. Co., 120 Mo. App. 59, 96 S. W. 673, the Lee case in effect was overruled by that court and the principles herein stated applied.

This brings us to the question of defendant's negligence. Was plaintff injured by a danger naturally inhering in an employment conducted by the master with-

in the confines of reasonable care, or negligently by some of the specified acts of defendant? It is the duty of a railroad company so to systematize its highly complex operations that the different branches of its service will move in their different spheres without friction. The injurious consequences of loose methods are so certain and destructive that a strict adherence to rules of conduct is an imperative necessity. In the proper protection of the lives and property entrusted to its care, defendant had the right to determine how trains and cars should be run over its tracks and to give to one class of trains the right of way over others. Certainly, it had the right as it did, to provide that handcars should keep out of the way of all classes of trains so that the latter should not be hampered in their operation by the presence on the track of such inferior vehicles. The facts do not justify any inference of negligence on the part of defendant in the operation of the passenger train. The provision of a special schedule for the running of the train on that day was made necessary by the fact that it was so far behind time it could not well be run on its regular schedule. The trainmen were justified in assuming that the operators of handcars would keep out of the way and, while they were charged with the duty of keeping a proper lookout ahead for possible danger, they were not required to anticipate that they might encounter handcars on the track and, therefore, were under no duty to take special precautions to meet such contingency. It cannot be gainsaid that the engineer and fireman discovered the peril of the men on the handcars at the first opportunity presented and by immediately giving warning signals and making every effort to stop the train did all in their power to avert the disaster that befell. In the doing of these things they filled the measure of their duty and it is very plain that, if defendant is to be held liable on account of negligence, the wrongful act must be

found in the conduct of its vice principal, plaintiff's foreman.

The use of handcars by section hands in the prosecution of their work is so general that it must be judicially recognized as a proper custom. True, it is attended by danger. The men must work at places where their foreman cannot avail himself of telegraphic information and therefore cannot know exactly of the movement of trains. Regularly scheduled trains frequently are late. Extra and special trains often are sent out, of which the foreman can have no knowledge. Natural conditions are such that whenever a handcar is on the main track its occupants must consider themselves as being in danger of encountering passing trains. Such dangers as are incidental to the customary use of these vehicles should be regarded as naturally belonging to the employment and are to be classed with the risks assumed by the servant.

But the greater the risk, the greater the vigilance demanded by the dictates of reasonable care to avoid injury. A person of ordinary care never will trust himself or those committed to his care to mere chance, where means are available by the employment of which he may overcome probable danger. Ordinary care calls for the use of the senses to discover approaching danger and for a reasonable exercise of judgment to avert it. In sending plaintiff and his fellows out to work under the direction of a foreman, defendant committed to its vice principal the performance of its duty to exercise reasonable care for his protection. The foreman had no right knowingly to order him into a place of certain and imminent peril, nor did he have the right to subject plaintiff to risks beyond those incidental to the employment. He knew that the passenger train was past due; that it might appear at any moment and overtake the handcars before they reached camp; that, owing to the sharp curves in the track and the topographical obstructions

to vision, the risk of being suddenly overtaken and run down by the fast train was so great that it could be avoided only by the chance that the train might not appear, or by the exercise of the greatest caution and vigilance in the running of the handcars. Yet, in the face of this knowledge, we find that he neither communicated to the men the fact of their great danger, that they might either decline to encounter it or else be on the alert to avoid it, nor did he give any order or take any steps to safeguard them, such as running slowly and cautiously, stopping at vantage points to look and listen or at places of particular danger such as the one where the injury occurred, dropping a flagman at the curve to warn them should the train approach, and in the last extremity to flag the train to stop.

Concede that the foreman had no right to place the handcars in a position to interfere with the traffic on the road and should not have relied on stopping the passenger train to guard their safety, all rules must give way to the exigent demands of imminent danger. Under the humanitarian doctrine, the trainmen would have been culpable had they failed, after discovering the peril, to stop the train if by so doing they could have avoided the injury, and, if dire necessity called for the flagging of the train as the only means of escape, then it would have been the duty of a flagman to perform that act and of the trainmen to heed the signal given. We are not saying that the foreman should have stationed flagmen— that may not have been an act that would have been suggested by reasonable care—but we are saying that precautions equal to the peculiar emergency should have been adopted. If, as defendant argues, nothing could have been done that was not done that is to say, that the car had to be run as on ordinary occasions—then, under the confronting conditions, it was negligent to attempt to make the run until after the train had passed, since escape from injury would be the result of mere accident

and the foreman had no right, either moral or legal, to make the safety of his men the sport of chance. If, on the other hand, efficient precautionary measures could have been adopted, then the foreman was negligent since he did nothing at all. So that, viewed in any light, the evidence of plaintiff presents a case of negligence on the part of the foreman and, if it believed that evidence, it was for the jury to determine what acts of omission or commission of those pleaded were the producing cause of the injury.

We cannot declare, as a matter of law, that plaintiff was negligent. His conduct also was an issue for the jury. If, unaware that the passenger train was due, the risks involved in obeying the order of the foreman to board the car, which were presented to his mind, were included within the ordinary risks of his employment, and it is a reasonable inference to say that he was justified in assuming, first, that the danger was not so glaring and imminent as immediately to threaten his safety, and, second, that he could rely on the foreman to use ordinary care during the passage to camp. After he boarded the car, plaintiff could do nothing but perform the duties of the post assigned him and avail himself of the opportunities afforded him to look and listen for an approaching train. In the light of his knowledge of the situation, the question of whether he made a reasonable use of his senses essentially is one of fact and not of law.

It is suggested that as there is no telegraph office at Blake, the foreman could not have known of the special schedule on which the train was running, and as his opportunities to know of the exact movements of the train were no greater than those of plaintiff, both were on the same plane, and under equal duty to look out for the appearance of the train as one of the incidental hazards of the employment. The answer thereto is that the master, in the person of the foreman, and the servant

did not stand on an equal footing. It was the duty of the one who had the right to command to exercise care commensurate with the exigencies of the situation to guard against the giving of orders which would subject the other to unusual peril. In the performance of this duty, the foreman should have borne in mind the fact that the belated train had not yet passed that point. On the other hand, the servant owes obedience to the master, and while he cannot, in the exercise of reasonable care, shut his eyes and blindly enter into patent danger, he is not chargeable with the duty of providing for the safety of the place in which he is to work, nor of the tools and appliances which he finds it necessary to use. It is his business to do his master's work, and to give that his chief attention, and as to those dangers and defects which are not open to his observation while in the performance of his work, he has the right to rely on the care and vigilance of the master for his protection.

In the present situation we cannot say, in law, that it would have been negligence *per se* for plaintiff to have failed to observe whether or not the train had passed. The character of his work and the situation in which he was compelled to perform it may have prevented him from keeping that fact in mind or from acquiring accurate knowledge concerning it, but it was the duty of the foreman to know that fact. The inequality in the position of the foreman and plaintiff prevents us from saying, as a matter of law, either that their means of knowledge were the same, or if they were, that what would be negligence in the one would necessarily be negligence in the other.

The learned trial judge committed no error in overruling the demurrer to the evidence. The views expressed sufficiently dispose of the points made by defendant on the instructions.

Finally, defendant insists that the verdict is excessive. The injuries consisted of an abrasion of the skin

on one hand, not of serious consequence, and of severe bruises along the back, the worst of which was in the lower part of the back and extended in effect to the deep muscles. Naturally, such injuries caused much pain, both physical and mental, and there were some symptoms of nervous shock from which plaintiff had not wholly recovered at the time of the trial which occurred between four and five months after the injury. Plaintiff first was removed to a hospital at St. Joseph where he remained at defendant's charge for a month. He then went to Kansas City and obtained work, but at the end of two weeks was compelled to quit because his back "gave out on him." At the time of the trial, he was disabled from following his vocation of common laborer and Dr. Humphreyville, a reputable physician, testified that he was suffering from traumatic lumbago, from which he would not recover for two or three months. He was put to no expense for medical treatment, all such expenses being borne by defendant, and considering the temporary nature of the injuries, the verdict appears to us to be all that a jury should have given, but we do not feel justified in pronouncing it to be the result of passion or prejudice. The loss to plaintiff in wages is approximately $300 and the allowance of $1,200 for the pain, suffering and nervous shock does not outrage conscience nor convince us that the verdict was not the product of deliberate and fair judgment.

It follows that the judgment must be affirmed. All concur.