ADELBERT CHANDLER, Respondent, v. ST. LOUIS & SAN FRANCISCO RAILROAD COMPANY, Appellant.

Kansas City Court of Appeals, December 2, 1907.

-1. **MASTER AND SERVANT: Indian Territory: Common Law: Missouri and Arkansas Doctrine: Federal Rule: Cause of Action.** Missouri and Arkansas use "the same brand of common law" governing master and servant and this differs materially from the Federal interpretation of the common law on that subject that prevails in the Indian Territory, though the statutes of Arkansas were in force in that territory; and a servant whose injury in the territory gave him no cause of action against his master, can maintain no action in this State therefor, though the master's act would be actionable under the decisions of Missouri.

2. ————: **Federal Rule: Local Law: Common Law: Statute.** The Federal courts uniformly hold that where the relation of master and servant is unaffected by the statute the question of the responsibility of the master for injuries to or by the servant is one of general law in regard to which the courts of the United States are not bound to follow the State rule; where the statutes of the State govern such relations they will be followed by the Federal courts.

3. ————: ———: **Concurrent Negligence: Fellow-Servant.** The Federal doctrine is that if the negligence of the master had a share in causing the injury of the servant the company will be liable, nothwithstanding the negligence of a fellow-servant contributing to the accident.

4. ————: ———: **Section Foreman: Running Handcar.** Under the Federal rule in the operation of a handcar, the section foreman is not the vice-principal of the company, but is a fellow-servant of the other section hands.

5. ————: ———: **Fellow-Servant: Assumption of Risk.** Under the federal rule prevailing in the Indian Territory the master is not responsible for the acts of a fellow-servant; and under the facts in this record no action arose to the plaintiff on account of the crowded condition of the handcar on which he rode, since he assumed the risk, under the rule of law prevailing in that territory.

Appeal from Jackson Circuit Court.—*Hon. James H. Slover,* Judge.

REVERSED.

*L. F. Parker* and *I. P. Dana* for appellant.

(1) The trial court erred in overruling defendant's demurrer filed at the close of all the testimony in the case, and in refusing to give the instruction which it asked directing a verdict in its favor. Fogarty v. Transit Co., 180 Mo. 502; Root v. Railway, 195 Mo. 371; 22 Am. & Eng. Enc. Law (2 Ed.), 1378; 1 Jaggard on Torts, p. 102, sec. 34; State to use v. Railway, 45 Md. 41; Beacham v. Proprietor, 68 N. H. 382, 40 At. Rep. 1066; Pullman Co. v. Lawrence, 74 Miss. 782; Railroad v. Tanner, 68 Ga. 384; Railroad v. Babcock, 144 U. S. 190. (2) Defendant was entitled to a direction from the trial court for a verdict in its favor even under the laws of Missouri. Mathis v. Stock Yards Co., 185 Mo. 444; Lee v. Railroad, 112 Mo. App. 391; Zeigenmeyer v. Cement Co., 113 Mo. App. 337; Post v. Railroad, 97 S. W. 233.

*Reed, Yates, Mastin & Howell* for respondent.

JOHNSON, J.—Plaintiff, employed by defendant as a section hand, was thrown from a handcar and injured. He brought this action in the circuit court of Jackson county to recover damages and in his petition alleged that his injury was the direct result of 'defendant's negligence. He recovered judgment in the sum of two thousand dollars and defendant appealed.

The injury occurred on the 6th day of November, 1902, on defendant's railroad near the station of Miami in the Indian Territory. Plaintiff was a member of a section crew consisting of ten laborers and a foreman. In obedience to an order of the foreman, they placed their tools, dinner buckets and a water keg on the car

and the eleven found places thereon and proceeded to the scene of their work for that day. The vehicle was an ordinary handcar, the platform of which was about five feet long and four and one-half feet wide. Plaintiff and three other laborers stood at the front handle and were so crowded that they were compelled to stand sidewise. The evidence of plaintiff tends to show that the car was overloaded and that on account of this condition and of the fact that he could use but one hand in supporting himself, his position was dangerously insecure. Plaintiff did not know where the car would stop and, taken unawares by a sudden and unnecessarily violent checking of its speed produced by one of the men setting the brake, was thrown in front of the car and seriously injured. It does not appear that the foreman who was present ordered the brake to be set at that time nor in that manner, but the act was performed by the brakeman of his own volition and for the reason that the car had reached the place where the men were to work. Plaintiff, on cross-examination, testified that he had been working for defendant "on that job" for about three weeks and that the car on that morning carried its usual load of men and tools.

The averment in the petition of specific negligence is as follows: "That its foreman, James Klegg, was negligent in placing upon said car said large quantity of tools and said eleven men thereby increasing the liability of plaintiff and others to be thrown from said car in the event of its sudden stop.

"That defendant, through its agent and servant, was guilty of negligence in suddenly applying the brake to said car while it was moving at a high rate of speed.

"That plaintiff was thrown from the car by reason of the concurring negligence of defendant's agents and servants in crowding and overloading said car and thereby rendering plaintiff's footing thereon insecure, and

in the sudden putting on of the brake of said car while it was being propelled at a high rate of speed."

The answer contains (1) a general denial, (2) a plea of contributory negligence, (3) a plea that the injury, if any, was the result of one of the usual and ordinary risks of the business, (4) the defense that "if plaintiff was injured at the place described therein, then his right to recover damages and defendant's liability therefor were and are dependent upon and must be determined by the law in force at the time in the Indian Territory, where he says he was hurt, and under such law defendant was not negligent, and was not and is not liable for his alleged injuries, for plaintiff assumed the risk in connection with his employment, of such injuries."

Defendant introduced in evidence sections 29, 30 and 31 of the Act of Congress of May 2, 1890, Vol. 26, U. S. Stat. at Large, pp. 93, 94, 95 and 96. This Act established a United States court of general jurisdiction in the Indian Territory and included the provision "that certain general laws of the State of Arkansas in force at the close of the session of the General Assembly of that State of 1883, as published in 1884, in the volume known as Mansfield's Digest of the Statutes of Arkansas, which are not locally inapplicable or in conflict with this act or with any law of Congress relating to the subjects especially mentioned in this section, are hereby extended over and put in force in the Indian Territory until Congress shall otherwise provide." Then follows an enumeration of the provisions of said general statutes adopted for use in the Indian Territory and among them that contained in chapter 20 of the Digest relating to the common and statute law of England. Defendant then introduced section 566 of said chapter 20, which is as follows: "The common law of England, so far as the same is applicable and of a general nature, and all statutes of the British Parliament in aid of or to supply

the defect of the common law made prior to the fourth year of James the First (that are applicable to our form of government), of a general nature and not local to that kingdom, and not inconsistent with the constitution and laws of this State, shall be the rule of decision in this State unless altered or repealed by the general assembly of this State." Further, defendant introduced in evidence the following decisions of Federal courts: Railroad v. Dye, 70 Fed. 24; Railroad v. Waters, 70 Fed. 28; Thom v. Pittard, 62 Fed. 232; Tomlinson v. Railroad, 97 Fed. 252; Coyne v. Railroad, 133 U. S. 370; Railroad v. Baugh, 149 U. S. 368; Railroad v. Hambly, 154 U. S. 349; Railroad v. Charless, 162 U. S. 359; Alaska Mining Co. v. Whelan, 168 U. S. 86; Railroad v. Conroy, 175 U. S. 323; Railway v. Dixon, 194 U. S. 338; 139 Fed. 737; Looney v. Railroad, 200 U. S. 480; Kohn v. McNulta, 147 U. S. 238; Railroad v. Seley, 152 U. S. 145; St. Louis Cordage Co. v. Miller, 126 Fed. 495. Also the following decisions of the Supreme Court of Oklahoma: Ruemmeli-Braun Co. v. Cahill, 79 Pac. 260; Molhoff v. Railroad, 82 Pac. 733.

Plaintiff introduced in evidence the decision of the Supreme Court of Arkansas in the case of Neal v. Railway, 71 Ark. 445, 78 S. W. 220.

At the conclusion of all the evidence, as well as at the end of that introduced by plaintiff, defendant requested the court to give an instruction peremptorily directing a verdict for defendant. The refusal of the court thus to instruct the jury is the chief ground of present complaint and presents questions of law, the proper solution of which will finally dispose of the case.

It is conceded that at the time of plaintiff's injury, there were no other courts of general jurisdiction in the Indian Territory than those established by the Act of Congress to which we have referred, and that appellate jurisdiction over actions originating in the territorial courts was vested in the Circuit Court of Appeals of

the United States for the Eighth Circuit. And further, it is admitted that the cause of action, if any, which inured to plaintiff in the Indian Territory was not statutory but arose from the common law and that it was transitory and not local. That is to say, being a species of intangible property of a personal nature, it traveled with the plaintiff, its owner, wherever he might go and could be enforced in the courts of any jurisdiction where the defendant could be legally brought into court.

The issues of law presented for our determination will appear from a statement of the positions taken by the respective parties: Defendant contends that the courts of the Indian Territory are bound to follow the interpretation of the rules and principles of the common law made by the appellate courts of the United States having jurisdiction over them and are not bound by the decisions of the Supreme Court of Arkansas whether pronounced before or after the adoption of the Arkansas statutes as a part of the jurisprudence of the Indian Territory where such decisions are in conflict with those of the federal courts. Defendant then points to a number of cases decided by the Circuit Court of Appeals for the Eighth Circuit and by the Supreme Court of the United States as authority sustaining its contention that on the facts adduced in evidence by plaintiff, he had no cause of action in the Indian Territory for the following reasons: (1) The two negligent acts of which he complains, namely, that of overloading the car and that of stopping it with unnecessary violence, were the acts of fellow-servants, for which defendant could not be held liable. Authorities cited show that in the running of a handcar the foreman of the section crew is not a vice-principal, but a fellow-servant. (2) Though it should be conceded that the foreman in the present case was a vice-principal, still plaintiff could not recover on account of the rule obtaining in the federal courts that where a servant is injured by the concurring negli-

gence of the master and a fellow-servant, there can be no recovery. (3) That as the car was loaded in the usual manner in vogue at the time plaintiff entered the employment, the rule followed by the federal courts would hold the risk of injury to be one assumed by plaintiff as one of the incidental risks of the employment, notwithstanding the practice was the offspring of defendant's negligence. Having reached the conclusion, as we have shown, that his injury afforded plaintiff no cause of action under the law as administered by the courts of the place where it occurred, defendant finally rests on the proposition that however radical the difference may be between the courts of this State and those of the United States in the interpretation of the common law with respect to the principles pertaining to the relation of master and servant, plaintiff can have no cause of action in this State nor any standing in its courts if he had none under the *lex loci delicti*.

Plaintiff, in repelling this argument has two strings to his bow. First, he argues, somewhat tentatively that whether the cause of action arose in this State or in another jurisdiction, the courts of this State, when required to go to the common law for rules and principles applicable, will use—to borrow counsel's expression—"our own brand of common law," and if it differs from that used by the courts of the place where the injury occurred, that fact is immaterial. The idea appears to be borrowed from the following expression of his individual view by the judge who wrote the opinion of the Supreme Court in the case of Root v. Railway, 195 Mo. 348: "The common law is a common heritage, i. e., it is *our* law, and why should we not adopt our own construction of our own law? The writer of this opinion sympathizes with that view,—otherwise in passing on the common law, we might speak with two voices and make 'confusion worse confounded.'" But the chief reliance of plaintiff is grounded on the rules and prin-

ciples of the common law as expounded by the Supreme
Court of Arkansas and which appear to be identical
with those recognized in our own State, and at vari-
ance with those pronounced by the federal courts. To
borrow again plaintiff's apt and striking expression in
so far at it relates to the present case, Missouri and Ar-
kansas use the same "brand of the common law" and one
which differs so radically from that used by the Federal
courts that under the former the pleadings and proof
of plaintiff discloses a good cause of action, while under
the latter, he has no right of action.

In the opinion of the Supreme Court to which we
have just referred (Root v. Railway), it is held that "in
a transitory common law action where suit is brought
in a State other than where the injury happened, the
interpretation of the common law obtaining in the State
where the cause of action accrued, the *lex loci* will gov-
ern." And further, "the gist of the matter is that if
a litigant has no cause of action in the courts of the
State in which he was injured, he has none elsewhere."
The same was said in Fogarty v. St. Louis Transfer
Co., 180 Mo. 490: "The contract of employment with
plaintiff was made in Illinois. The work to be done by
him and the work he did was in that State. The accident
happened in that State. The liability of the defendant,
must, therefore, be determined and measured by the laws
of that State." In both of these cases, the case of Alex-
ander v. Railway, 48 Ohio St. 623, was cited with ap-
proval. There it was said: "An act should be judged
by the law of the jurisdiction where it was committed,
the party acting or omitting to act must be presumed
to have been guided by the law in force at the time and
place and to which he owed obedience; if his conduct,
according to that law violated no right of another, no
cause of action arose, for actions at law are provided
to redress violated rights, nor is it material that the
rules of a Pennsylvania law that deny relief to plaintiff

in error result from the adjudications of the courts of that State instead of being legislative enactments. The rules of law established by judicial decisions are as binding as legislative enactments until modified or overturned by other decisions or legislative enactments binding within that jurisdiction. In theory, it may be true that there is no common law of Ohio or of Pennsylvania; that the common law is one and the same in every State acknowledging its obligations; and that the decisions of one State are but evidence of it, not binding upon the courts of any other State. But, as a matter of fact, we know that in the application of the rules of common law to the affairs of men, there is, unfortunately, in the several States a wide divergence, and that it necessarily follows that acts and transactions sufficient in one State to create a cause of action will not produce that result in another and, in the administration of justice, mere theory must be made to yield to the truth as established by facts and experience."

A very clear statement of the principle was made by the Supreme Court of Alabama in Railroad v. Carroll, 11 So. 803. "We do not understand appellee's counsel even to deny either the proposition or its application to this case,—that there can be no recovery in one State for injuries to a person sustained in another unless the infliction of the injuries is actionable under the law of the State in which they are received. Certainly, this is the well-established rule of law, subject in some jurisdictions to the qualification that the infliction of the injuries would also support an action in the State where the suit is brought had they been received in that State. . . . The true theory is that no suit whatever respecting this injury could be sustained in the courts of this State except pursuant to the law of international comity. By that law, foreign contracts and foreign transactions out of which liabilities have arisen may be prosecuted in our tribunals by the implied assent of the

government of this State, but in all such cases, we administer the foreign law as from the proofs we find it to be or as without proofs, we presume it to be."

It is immaterial that the rules and principles of the law obtaining in the Indian Territory differ from those recognized and followed by the courts of this State. Our concern is not with the question of whether the law there is as we would have it, nor are we called upon to attempt to harmonize that law with ours, nor to make something out of nothing. The vital question is, Did plaintiff have a cause of action in the Indian Territory which the courts of that jurisdiction under their view of the law would enforce? If he had no cause of action there, certainly he could not acquire one by entering this State. If naked when he came to our border, the mere act of stepping over an imaginary line would not clothe him. His cause of action must be measured not by our own standard but by that fixed by the rules and principles recognized by the courts of the place where he was injured. If there is no law giving him a right of action in the place where the alleged wrongful act was committed, no action can be maintained here, though the laws of this State would have given him a right of action had the same acts been committed within our boundaries. To hold otherwise would be to say that one State could prescribe rules, no matter how arbitrary, to govern persons and things in another State, "and thus contravene the fundamental principles maintained by all nations that every independent State has an exclusive right to regulate persons and things within its own territorial limits and that the laws of the State or country can have no intrinsic force *proprio vigore* except within the territorial limits and jurisdiction of that country." [State to use of Allen v. Railway, 45 Md. 41; 22 Am. and Eng. Ency. of Law (2 Ed.), 1378; Jaggard on Torts, section 34; Cooley on Torts (2 Ed.), side page 471; Pullman Co. v. Lawrence, 22 So. (Miss.)

53; Brewster v. Railway, 86 N. W. (Ia.) 221; Railroad v. Harris, 29 So. (Miss.) 760; Walsh v. Railroad, 36 N. E. (Mass.) 584; LeForest v. Tolman, 117 Mass. 109; Railroad v. Moore, 29 Kan. 452; Willis v. Railway, 61 Tex. 432; Railroad v. Carroll, 11 So. 803; Bridger v. Railroad, 3 S. E. (S. C.) 860; Railroad v. Tanner, 68 Ga. 384; Railroad v. Babcock, 154 U. S. 190.]

These considerations not only dispose of the suggestion that our own construction of the common law should obtain, but also answer the argument that the decisions of the Supreme Court of Arkansas should control in actions arising in the Indian Territory. The courts of the United States have uniformly held that where the relation of master and servant is unaffected by statute, the question of the responsibility of the master for injuries caused to or by his servants is one of general law, in regard to which courts of the United States are not bound to follow the State court. [Railroad v. Baugh, 149 U. S. 368; Railway v. Mase, 63 Fed. 115.] In the latter case, Judge SANBORN, speaking for the Court of Appeals for the Eighth Circuit, said: "In the absence of legislative enactments, the liability of a master to one of his employees for the negligence of another is determinable by the general law, and not by the local law, and the decisions of the courts of the State in which the injury is inflicted are not controlling in the national courts. But whenever this subject is regulated by the statutes of the State in which the injury is inflicted, these become the rules of decision in trials at common law in the national courts, under section 721 of the Revised Statutes, and measure the duties and liabilities of the litigants." To the same effect is Railway v. O'Leary, 93 Fed. 737. As it does not appear that the State of Arkansas had in force any statute affecting the cause of action asserted by plaintiff, it is clear from the authorities last cited that, had the injury been inflicted in Arkansas, the Federal courts, in an action brought

therein by plaintiff, would not have considered themselves bound to follow the interpretation of the common law to be found in the decisions of that State, but would have determined the right asserted by plaintiff by the rules and principles of the general law recognized by the courts of the United States. Certainly, they would apply the same standard to an action brought in the Indian Territory to recover for an injury sustained in that jurisdiction. And, if it be true that the principles of the general law relating to the relation of master and servant as interpreted and applied by the courts of the United States would preclude a recovery by plaintiff, we must hold that he had no right of action in the courts of the place of his injury and, therefore, none in the courts of this State.

We find the rule invoked by defendant that where a servant is injured by the concurrent negligence of the master and a fellow-servant no action will lie against the master, is not recognized by the courts of the United States as a rule of the common law. Recently in the case of Gila Valley Ry. Co. v. Lyon (203 U. S. 465), the Supreme Court of the United States applied the contrary doctrine: "The rule would seem to be that if the negligence of the company had a share in causing the injury to the deceased, the company was liable notwithstanding the negligence of the fellow-servant contributing to the happening of the accident." [Citing Railway v. Cummings, 106 U. S. 700; Ellis v. Railway, 95 N. Y. 546.] To the same effect was the decision of the Circuit Court of Appeals for the Fourth Circuit in J. W. Bishop Co. v. Dodson, 152 Fed. 128.

But it has been held both by the Supreme Court of the United States and the Circuit Court of Appeals for the Eighth Circuit that in the operation of a handcar, the section foreman, in his relation to the section hands should not be regarded as the vice-principal of the company, but as a fellow-servant. [Railway v. Charless,

162 U. S. 359; Alaska Mining Co. v. Whalen, 168 U. S. 86; Railroad v. Baugh, 149 U. S. 368; Railroad v. Hambly, 154 U. S. 349.; Railroad v. Waters, 70 Fed. 28.] This rule would prevent a recovery by plaintiff in the courts of the Indian Territory on the cause of action pleaded in the petition, since the negligence of the defendant as alleged, consisted of acts of fellow-servants for which defendant could not be held under the doctrine of *respondeat superior*. But had plaintiff alleged, as one of the elements of his cause of action, the negligence of his master in failing to exercise reasonable care to furnish him with reasonably safe and suitable appliances and to provide him with a reasonably safe place in which to work, still he could not recover in the Indian Territory, for the reason that under the principle of assumption of risk, as interpreted by the courts of the United States, the risk of such injury was assumed by him as one of the incidents of his employment. In St. Louis Cordage Co. v. Miller, 126 Fed. 495, the Circuit Court of Appeals for the Eighth Circuit reaffirmed the rule which has repeatedly received the sanction of other Federal Courts that "Among the risks and dangers which the servant assumes by entering or continuing in the employment without notifying his master of them are those which arise from the failure of the master to completely discharge his duty to exercise ordinary care to furnish the servant with a reasonably safe place to work and reasonably safe appliances to use." The negligence of which plaintiff complains, or could complain, existed at the time he entered defendant's service and continued to the date of his injury. He made no complaint to the master, nor did he have any assurance that the defect would be remedied. Clearly his injury afforded him no right of action in the courts of the Indian Territory. Had it occurred in this State, the facts disclosed by him, if believed by the jury, would have entitled him to recover. [Mack v. Railway, 123 Mo.

App. 531, 101 S. W. Rep. 142; Stanley v. Railroad, 112 Mo. App. 601; Haworth v. Railway, 94 Mo. App. 215.]

It follows that the judgment must be reversed. All concur.