WALTER FARRAR, Appellant, v. ST. LOUIS & SAN
FRANCISCO RAILROAD COMPANY, Respond-
ent.

Springfield Court of Appeals, July 7, 1910.

1. **MASTER AND SERVANT: Fellow-Servants: Law of Indian
Territory.** Plaintiff, while working as a section hand on de-
fendant's railroad in the Indian Territory, was injured by
the negligence of the section foreman, who, while cutting
a rail with a chisel is alleged to have held the chisel in such
a careless manner as to cause a steel sliver to fly off and
strike plaintiff in the eye. *Held*, that under the law of the
Indian Territory, which was under Federal jurisdiction at
the time that the section foreman and plaintiff were fellow-
servants, and there could be no recovery.

2. ——: ——: ——: **Railroads: Admission of Oklahoma
as a State.** The Constitution of Oklahoma was adopted at an
election held September 27, 1907; the President on November
17th, issued his proclamation announcing the result of said
election and declaring the Indian Territory a part of the newly
organized State of Oklahoma. *Held*, that under the express
terms of the Enabling Act the proposed State of Oklahoma
was admitted into the Union when the President issued his
proclamation and not before. *Held*, further that the liability
of a railroad for an injury to a section man through the care-
lessness of a section foreman, which happened in the Indian
Territory on November 2, 1907, would be determined by the
laws of the Indian Territory as announced by the Federal
Courts and not under the Constitution of Oklahoma, which
abrogated the common law doctrine of fellow-servants as to
employees of railroad companies.

3. ——: ——: ——: **Federal Rule: Missouri Rule.** Under
the decisions of the Federal Courts, a section foreman is a
fellow-servant of his section men, but under the Fellow-
Servant Law as declared by the Supreme Court of Missouri,
the foreman would be a vice-principal for whose negligence
as such the master would be liable.

4. **CONSTITUTIONAL LAW: Time of Taking Effect: Distinction
Between a Constitution Adopted by a State and Territory.**
The general rule that constitutions and constitutional amend-
ments take effect upon their ratification by the people, unless
otherwise provided in the instrument itself or the resolutions

submitting them, applies to sovereign States possessing within themselves the power to make and unmake constitutions, but can have no application to territories which, under our system of government, do not possess the power within themselves to initiate a separate form of government; but are governed by enabling acts passed by Congress.

5. **CONFLICT OF LAWS: Action Accruing in Another State.** Plaintiff, a section man was injured in the Indian Territory, through the negligence of a section foreman. *Held,* that as he had no cause of action against the railroad company in the Indian Territory, he could acquire none by entering and suing in Missouri, even though he would have had a cause of action had the accident happened in Missouri.

6. ————: **Limitations of State Laws.** Every independent State has an exclusive right to regulate persons and things within its own territorial limits, and the laws of the State or country can have no intrinsic force *proprio vigore* except within the territorial limits and jurisdiction of that State or country where enacted.

7. ————: **Master and Servant: Liability of Master.** The courts of the United States have uniformly held that where the relation of master and servant is unaffected by statute, the question of responsibility of the master for injuries caused to or by his servants is one of general law, in regard to which the courts of the United States are not bound to follow the State law.

Appeal from Howell Circuit Court.—*Hon. W. N. Evans,* Judge.

AFFIRMED.

*Livingston & Livingston* for appellant.

(1) The Constitution abolishing the Fellow-Servant Law in that State took effect on the day that the Constitution was adopted by the people. 8 Cyc. 744; State v. Kyle, 166 Mo. 287. (2) Duncan, the section foreman, was as clearly the vice-principal of defendant as ever such fact occurred in any case. Burkard v. Leschen, 217 Mo. 446; Koerner v. Car Co., 209 Mo. 157; Edge v. Railroad, 206 Mo. 475; Reedes v. Crystal Co., 129 Mo. App. 107; Doss v. Railroad, 135 Mo, App. 643;

Schmeiser v. Central Co., 134 Mo. App. 493; Hagan v. Gibson Co., 131 Mo. App. 386; Knight v. Donelly, 131 Mo. App. 152; Combs v. Roundtree Co., 205 Mo. 367. (3) The employee in entering the services of the master does not assume the risks of injury caused by the master, or the negligence of the foreman; and that this injury was inflicted through the gross negligence and carelessness of the foreman is not disputed. Naughteen v. Laclede Co., 123 Mo. App. 192; Garner v. Railroad, 128 Mo. App. 406; Huston v. Railroad, 129 Mo. App. 576; Mack v. Railroad, 123 Mo. App. 531; Kirby v. Coal Co., 127 Mo. App. 588.

*W. F. Evans, W. J. Orr* and *J. H. Orr* for respondent.

(1) Under the uniform decisions of the Federal Courts, whose decisions were binding on all of the courts of the Indian Territory at the time of the accident, it makes absolutely no difference what kind of work was being done nor what Duncan was called, he was a fellow-servant of plaintiff. The superior servant rule contended for by learned counsel in this case has never obtained in the Federal Courts since the old case of Ross v. Railroad, 112 U. S. 377, was overruled. Railroad v. Baugh, 149 U. S. 368; Railroad v. Conroy, 175 U. S. 343. (2) It is well settled that the defendant's liability is to be determined by the laws in force in the Indian Territory at the time of the accident. Root v. Railroad, 195 Mo. 348, 92 S. W. 621; Chandler v. Railroad, 106 S. W. 553; Gabriel v. Railroad, 115 S. W. 3; Fogarty v. Transit Co., 79 S. W. 664; Ham v. Railroad, 117 S. W. 108. (3) The courts of this State do not take judicial knowledge of the laws of a sister State, but such laws must be proven as a fact in the case. It is also well settled that those decisions and statutes which appear in the record as evidence of the foreign law are binding on the trial court, and the appellate court. Talbut v. See-

man, 1 Cranch 1; Coats v. Railroad, 134 Ill. App. 217; Hartman v. Railroad, 39 Mo. App. 97; Guaranty Co. v. Hilton, 77 N. E. 312; Kelly v. Kelly, 161 Mass. 111. (4) The plaintiff and James Duncan were fellow-servants under the decisions of the Federal Courts whose decisions were then binding on the courts in the Indian Territory. Railroad v. Peterson, 162 U. S. 346; Railroad v. Charles, 162 U. S. 359; Railroad v. Hambly, 154 U. S. 349; Randall v. Railroad, 109 U. S. 478; Railroad v. Bourman, 29 U. S. R. 319; Martin v. Railroad, 166 U. S. 402; Alaska Mining Co. v. Whelan, 168 U. S. 86; American Bridge Co. v. Seeds, 144 Fed. 605; Railroad v. Fishback, 123 Fed. 465; Thomas v. Railroad, 97 Fed. 245; Westinghouse v. Callahan, 155 Fed. 397; Vilter Mfg. Co. v. Otte, 157 Fed. 230; Portas v. Griffen, 160. Fed. 648. (5) Respondent contends that the Constitution became effective just as the enabling act provides from the date of the President's Proclamation, section 4, of the Enabling Act. Arie v. State, 100 Pac. 23; Parks v. Ada, 100 Pac. 607; Kelly v. McCombs, 102 Pac. 186; State v. Bridges, 94 Pac. 1065; Edwards v. Jewell, 104 Pac. 335; Kelly v. United States, 104 Pac. 922; Ex Parte Ellis, 94 Pac. 556; Turner v. Trial, 103 Pac. 577.

NIXON, P. J.—This was an action commenced in Howell county, Missouri, for damages in the sum of $7500 for personal injuries alleged to have been received by plaintiff by reason of the negligence of the defendant's servants. The answer set up a general denial, a plea of contributory negligence, assumption of risk, and, lastly, that the plaintiff was injured in the Indian Territory and that his right to recover damages and the defendant's liability for his injuries were dependent upon and to be determined by the law in force in the Indian Territory where the accident occurred.

At the conclusion of all the evidence, the court sustained a demurrer and peremptorily instructed the

jury to find the issues in favor of the defendant, which, being done, and judgment entered thereon, the plaintiff appealed.

I. The accident happened at Sapulpa, Indian Territory, on November 2, 1907. The proclamation of the President of the United States declaring the Indian Territory a part of the newly organized State of Oklahoma was issued on November 17, 1907. One of the questions presented on this appeal is as to whether the Constitution and laws of the State of Oklahoma were in force on November 2, 1907. It has been agreed by the parties for the purposes of this trial that by the Act of Congress of May 2, 1890, the common law of England was extended over the Indian Territory so far as the same was applicable and of a general nature, and all of the statutes of Parliament in aid of or to supply the defects of the common law made prior to the fourth year of James the First, so far as applicable, of a general nature and not local to that kingdom. Section 250 of the Constitution of Oklahoma is as follows: "Section 250.—Common Law Doctrine Abrogated.—Section 36. The common law doctrine of the fellow-servant, so far as it affects the liability of the master for injuries to his servant, resulting from the acts or omissions of any other servant, or servants, of the common master, is abrogated as to every employee of every railroad company. . . ." So that the adoption of the Constitution of Oklahoma abolished the common law doctrine of fellow-servant.

The Constitution was adopted on September 27, 1907, at a general election held by the people for that purpose. The question is as to when the Constitution became effective, and it is to be determined by the Enabling Act of Congress which provides that in case a Constitution and State government shall be formed in compliance with the provisions of such Act, the convention forming the same shall provide by ordinance for

submitting such Constitution to the people of such proposed State for ratification or rejection; and it was further provided in said Enabling Act that "if the Constitution and government of said proposed State are republican in form, and if the provisions of this Act have been complied with in the formation thereof, it shall be the duty of the President of the United States, within twenty days from the receipt of the certificate of the result of such election and the statements of the votes cast thereon and a copy of said constitution, articles, propositions and ordinances, to issue his proclamation announcing the result of said election, and thereupon the proposed State of Oklahoma shall be deemed admitted by Congress into the Union under and by virtue of this Act on an equal footing with the original States."

The accident therefore occurred at a date between the adoption of the Constitution and the date of the proclamation of the President, and the proposition does not seem open for difference of view that under the express terms of the Enabling Act, when the President issued his proclamation announcing the result of the vote and adoption of the Constitution, the proposed State of Oklahoma was admitted as a member of the Union of States, and that the territories then and not until then passed into the condition of Statehood.

The general rule that constitutions and constitutional amendments take effect upon their ratification by the people, unless otherwise provided in the instrument itself or the resolutions submitting them, applies to sovereign States possessing within themselves the power to make and unmake constitutions but can have no application to territories which, under our system of government do not possess the power within themselves to initiate a separate form of government. The territories are under the absolute control of Congress, and can only become states and form for themselves laws or consti-

tutions in the manner pointed out in the Enabling Acts. Hence, the accident having happened on the 2d day of November, 1907, and the President's Proclamation having been issued under the Enabling Act on November 17, 1907, the defendant's liability is to be determined by the law in force in the Indian Territory at the time of the accident.

II.   The question to be determined in this case is whether under the evidence, James Duncan, the section foreman of the defendant, and the plaintiff as one of his men, were fellow-servants; that is, whether the relation between them, under the decisions of the Federal Courts, was such that the plaintiff assumed the risk of the negligence of his section foreman in the latter's direction of the men and work to the same extent that he assumed the risk of the negligence of a fellow-laborer by his side engaged in performing the work.

The evidence shows that some fifteen or twenty men worked under the direction of Duncan, among whom was the plaintiff; that the section foreman and his men performed all classes of work that they were directed to do about the track, such as repairing broken rails and keeping the road in safe condition for the operation of trains, sometimes putting in switches, taking up track at one place and putting it down at another, their work pertaining to the tracks and roadbed. The section foreman usually employed men when the division superintendent was not there; and when a man was discharged, the section foreman would give him a certificate and time check showing he had worked on the section during a certain time and the division superintendent would pay him. The section foreman would also send a statement to the roadmaster showing the number of days the men had worked during each month. This was the track department. The section foreman's immediate superior was the division roadmaster, H. Campbell, whose immediate superior was the superintendent, H. F. Clark.

The section foreman would occasionally discharge the duties incumbent on the workmen under his charge; he would hold the rail, or line up the track, drive bolts, tamp dirt, etc., but his principal work was to boss the section men. The usual work of the men was tamping ties, laying track, putting in rails and cutting rails.

A rail was being cut at the time plaintiff was injured. The workman, under the direction of the section foreman, James Duncan, had a thirty foot rail which they desired to cut in two. They were trying to cut off a piece eight feet long. The rail was placed on another rail and the men were cutting at the bottom, trying to make an indentation so that the rail could be broken. The section foreman, Duncan, was holding the chisel, and plaintiff's brother was doing the striking with a spike hammer. The plaintiff was holding the flange of the rail and was on the short end. Some of the workmen were on the other end while others were on the same end with the plaintiff. Plaintiff was next to Duncan, the foreman; about three feet from him. The flange and center of the rail had been cut clear across the bottom and there were only about three more blows to be struck and the rail would then have been cut sufficiently to allow breaking. Duncan was holding the chisel, but at the time plaintiff was injured, he moved the chisel out of the crevice, so that when the hammer struck, a piece flew out, striking the plaintiff. When Duncan set the chisel out of the crevice, he set it on the side opposite plaintiff and the plaintiff then said to Duncan, "Duncan, the chisel is out of it." Another man said, "Yes it is, Jim." Duncan said, "I guess I know what I am doing" and told the plaintiff's brother to go ahead and hit it, which he did. A piece or sliver went into plaintiff's skull and eyeball and the injury was such that he had to undergo a surgical operation by which his eye was removed.

Under the Fellow-Servant Law, as declared by the Supreme Court of the State of Missouri in cases of neg-

ligence arising between master and servant, the foreman, James Duncan, in charge of the men who were at work under him, was the vice-principal of the company; and under such circumstances, it is held as the law of this State that the master is liable for the injuries caused by the vice-principal's incapacity or carelessness whether known to the principal or not. [Dowling v. Allen & Co., 74 Mo. 13; McDermott v. Hannibal & St. J. R. Co., 87 Mo. 285; Covey v. Hannibal & St. J. R. Co., 27 Mo. App. 170; Sullivan v. Hannibal & St. J. R. Co., 107 Mo. 66, 17 S. W. 748; Miller v. Mo. Pac. Ry. Co., 109 Mo. l. c. 355, 19 S. W. 58; Bradley v. Chicago, M. & St. P. Ry. Co., 138 Mo 293, 39 S. W. 763.] These cases and numerous others announce in no uncertain tone what is known as the superior servant law.

The law is equally well-established that in order for the plaintiff to recover in this action it must be deter-mined that the plaintiff had a cause of action in the Indian Territory which the courts of that jurisdiction, under their view of the law at the time of the accident, would enforce. If he had no cause of action there, he could acquire none by entering the State of Missouri. The cause of action must be measured, not by the standards of the Missouri courts, but by those fixed by the rules and principles recognized by the courts of the place where the injury occurred. If that law gave him no right of action, no cause of action could be maintained in our jurisdiction, although the laws of this State would have given him a cause of action had the same acts been committed within its confines. To hold otherwise would be to say that one state could prescribe rules, no matter how arbitrary, to govern persons and things in another state, and thus contravene the fundamental principles maintained by all nations that every independent state has an exclusive right to regulate persons and things within its own territorial limits, and that the laws of the state or country can have no intrinsic force *proprio vigore* except within the territorial

limits and jurisdiction of that state or country. [Chandler v. St. L. & S. F. R. Co., 127 Mo. App. 34, 106 S. W. 553, and cases cited; Newlin v. St. L. & S. F. R. Co., 222 Mo. 375, 121 S. W. 125; Root v. K. C. S. Ry. Co., 195 Mo. 348, 92 S. W. 621; Ham v. St. L. & S. F. R. Co., 136 Mo. App. 17, 117 S. W. 108; Rahm v. Chicago, R. I. & P. Ry. Co., 129 Mo. App. 679, 108 S. W. 570; Gabriel v. St. L., I. M. & S. Ry. Co., 135 Mo. App. 222, 115 S. W. 3.] The courts of the United States have also uniformly held that where the relation of master and servant is unaffected by statute, the question of the responsibility of the master for injuries caused to or by his servants is one of general law, in regard to which the courts of the United States are not bound to follow the State law. [Baltimore & O. R. Co. v. Baugh, 149 U. S. 368; New York, N. H. & H. R. Co. v. O'Leary, 93 Fed. 737.]

Under these conditions, had the plaintiff brought his action in the Indian Territory, the federal courts would have determined the rights asserted by plaintiff by the rules and principles of the general law recognized by the courts of the United States. And if it is true that the principles of the general law determining the relation of master and servant, as interpreted and applied by the courts of the United States, would preclude a recovery by plaintiff, we must hold that as he had no right of action in the courts of the place of his injury, he would therefore have none in the courts of this State. [Chandler v. St. L. & S. F. R. Co., 127 Mo. App. 1. c. 45, 106 S. W. 553.]

As we have said, many states, and among them, Missouri, have adopted what is known as the Superior Servant Law. The Federal Courts, however, have as uniformly adopted what is known as the separate department rule, as contra-distinguished from the Superior Servant Law. In the case of Baltimore & O. R. Co. v. Baugh, supra, Mr. Justice Brewer used this language: "It may be safely said that this court has never

recognized the proposition that the mere control of one servant over another in doing a particular piece of work destroys the relation of fellow-servants, and puts an end to the master's liability. On the contrary, all the cases proceed on the ground of some breach of positive duty resting upon the master, or upon the idea of superintendence or control of a department. It has never been affirmed that the employee assumes the ordinary risks incident to the service; and, as we have seen, it is as obvious that there is risk from the negligence of one in immediate control as from one simply a co-worker." In many cases analogous to the present, the law of fellow-servant has been announced by the Federal Courts. The facts as to the powers and duties of the foreman in the case of United Zinc Companies v. Wright, 156 Fed. 571, were not materially different from those of the foreman in the present case. In that case, much stress was put upon the extensive powers of control possessed by the foreman (whose name was Bruce), and the court said: "The evidence conclusively shows that the duties of Bruce as ground foreman were to direct the miners where to set up the drill, direct the shovelers where to shovel, direct the location of the underground tracks, and look after everything underground, and that it was a common practice for him at times to help the workman who were laboring under him in the actual drilling of holes, laying of tracks, and other such work. He was subject to the general orders of the superintendent. He hired men to work in his department and discharged them but the superintendent always paid them their wages." In this case, the court held that they were fellow-servants, that the risk was assumed, and that the defendant was not liable for the negligence of the foreman.

The case of Thomas v. Cincinnati, N. O. & T. P. Ry. Co., 97 Fed. 245, was a case in which the liability charged was on account of the yardmaster who was held by the trial court to be a vice-principal. Judge

Taft said: "The master found that the yardmaster was a vice-principal. I cannot agree in this conclusion. It is true that the evidence shows that the yardmaster had complete control of the yard; he was made responsible for its condition; that he was authorized to employ and discharge men; and that he directed the incoming and starting of trains. I do not think, however, that under the principles laid down in the Baugh case, 149 U. S. 368, this would put him at the head of one of the departments of the railroad." See Northern Pac. R. Co. v. Peterson, 162 U. S. 359; American Bridge Co. v. Seeds, 144 Fed. 605; Tomlinson v. Chicago, B. & Q. R. Co., 97 Fed. 252; Alaska Treadwell Gold Min. Co. v. Whelan, 168 U. S. 86; Kansas & A. V. Ry. Co. v. Waters, 70 Fed. 28.

Whether these cases enunciate principles which embody the most enlightened and progressive spirit of the common law of today, or should be applied by the courts, is not within our power to decide. It is sufficient for the purposes of this case to know that they have been approved and followed by courts of the highest authority and by judges of the greatest distinction, and at least contain an authoritative exposition of the Federal law in force in the Indian Territory at the time of the accident to the plaintiff. Under such law, the plaintiff and the section foreman were fellow-servants, and the defendant was not liable for the foreman's negligence.

Learned counsel have called our attention to the injustice of the Fellow-Servant Law as administered and interpreted by the Federal Courts. What is the best system of compensation for workmen for injuries received from industrial accidents is a question the decision of which rests primarily with the legislative branch of the government and not with the judiciary.

We find that the trial court under the law was justified in giving a peremptory instruction at the close of all the evidence in the case that the plaintiff could not recover. The judgment is affirmed. All concur.