F. TIP DAVIS, JOSEPH LOVEJOY DWIGHT, SR., V. THOMAS RICE, ROBERT E. CATES, BERNALDO D. BICOY AND ERNEST EDWARD WILES *v.* WILLAM F. QUINN, GOVERNOR OF THE TERRITORY OF HAWAII, AND EDWARD E. JOHNSTON, SECRETARY OF THE TERRITORY OF HAWAII, AND DR. SADAICHI KASAMOTO, HANNIBAL TAVARES, WILLIAM HARAKI, JAMES WESTLAKE, CLINTON CHILDS, TADAO OKIMOTO, ELMER S. CRAVALHO, ROBERT W. B. CHANG, ADAM AKANA, KAZUTO YOSHIOKA, YOSHITO TANAKA, HAROLD L. DUPONTE, AND TOSHIO KABUTAN.

No. 4130.

Argued May 19, 1959.          Decided May 22, 1959.

RICE, C. J., STAINBACK AND MARUMOTO, JJ.

This is a case submitted upon an agreed statement of facts, pursuant to section 227-1, Revised Laws of Hawaii 1955. An actual controversy exists between the parties, as hereinafter stated.

The plaintiffs are citizens, duly registered voters and electors of and in the 8th, 10th and 17th representative districts, in pairs, one of the Republican and the other of the Democrat party, representing each of said districts.

The intervening defendants are citizens, duly registered voters and electors of the 2nd, 7th, 13th, 14th and 18th representative districts, in pairs, one of the Republican and the other of the Democrat party, representing each of said districts.

Also, others of them, being county attorneys not acting in their official capacities, but as citizens and duly registered voters and electors of the basic areas within which the representative districts represented by the other intervening defendants are situated, respectively, the island of Hawaii, within which is the 2nd representative district; the islands of Molokai, Lanai, Maui and Kahoolawe, within which is the 7th representative district; and the islands of Kauai and Niihau, within which basic area is the 18th representative district.

The defendants William F. Quinn and Edward E. Johnston are the duly appointed, qualified and acting Governor and Secretary of the Territory of Hawaii, respectively, and are parties to the submission by reason of the duties and powers which are vested in them as such.

The question in difference concerns the number of representatives for the respective representative districts, to be nominated by the political parties and to be elected as members of the house of representatives of the first state legislature at the elections to be held pursuant to Public Law 86-3 before the admission of Hawaii as a State.

It it required by Public Law 86-3 that these elections be held and the returns certified to the President of the United States prior to the issuance of the Presidential proclamation, which, under section 7(c) of the act, effects the admission of the State of Hawaii into the Union.

The election was called by a proclamation made and issued by the Governor of the Territory of Hawaii on April 15, 1959. Sections 6 and 7(a) of the admission act provide that the elections shall be called by the Governor within thirty days after official notification of the approval of Public Law 86-3, thus within thirty days after March 18, 1959. By the proclamation the primary election is called for June 27, 1959 and the general or final election for July 28, 1959.

Paragraph 8 of the Governor's proclamation of April 15, 1959, sets out the number of members of the house of representatives by representative districts, designating the districts and number for each in accordance with Article XVI, section 1 of the constitution of the proposed state.

Under section 6 of Public Law 86-3 and section 10 of Article XVI of the constitution, the election is "for officers of all State elective offices provided for by the constitution of the proposed State of Hawaii."

Plaintiffs contend that it is within the power and duty of the Governor of the Territory of Hawaii to reapportion the membership of the house of representatives to be elected at these elections, by the method set out in Article III, section 4 of the constitution (Hawaii) and section 55 of the Hawaiian Organic Act as amended by Public Law 895, 84th Congress, approved August 1, 1956.

It is agreed that this method, if legally applicable and if the number of voters registered at the 1958 territorial general election is used as a basis, produces the following result, that is, an increase in the number of representatives for the districts in which plaintiffs are electors and a consequent decrease in the number of representatives for certain other districts. The agreed statement sets out, in one column the number designated by paragraph 8 of the Governor's proclamation of April 15, 1959, and in another column the number produced by reapportionment on the basis of the 1958 territorial registration, as hereinafter appearing.

### BASIC AREA—ISLAND OF HAWAII

| District | Column I<br>*Number of Representatives<br>designated in the Procla-<br>mation of April 15, 1959* | Column II<br>*Number of Representatives<br>if reapportioned by the<br>method stated above* |
|---|---|---|
| 1st | 1 | 1 |
| 2nd | 4 | 3 |
| 3rd | 1 | 1 |
| 4th | 1 | 1 |
| 5th | 1 | 1 |
| Total | 8 | 7 |

### BASIC AREA—ISLANDS OF MOLOKAI, LANAI, MAUI AND KAHOOLAWE

| District | Column I | Column II |
|---|---|---|
| 6th | 1 | 1 |
| 7th | 5 | 4 |
| Total | 6 | 5 |

### BASIC AREA—ISLAND OF OAHU

| District | Column I | Column II |
|---|---|---|
| 8th | 2 | 4 |
| 9th | 2 | 2 |
| 10th | 2 | 4 |
| 11th | 3 | 3 |
| 12th | 3 | 3 |
| 13th | 3 | 2 |
| 14th | 5 | 4 |
| 15th | 6 | 6 |
| 16th | 4 | 4 |
| 17th | 3 | 4 |
| Total | 33 | 36 |

### BASIC AREA—ISLANDS OF KAUAI AND NIIHAU

| District | Column I | Column II |
|---|---|---|
| 18th | 4 | 3 |
| GRAND TOTAL | 51 | 51 |

By consent of all parties, electors of the districts whose representation would be decreased (the 2nd, 7th, 13th, 14th and 18th districts) are given the status of intervening defendants and are parties to the agreed case. They contend that the proclamation of April 15, 1959 is correct and that the reapportionment sought by the plaintiffs would be in denial of their rights.

The reapportionment sought by the plaintiffs would reduce the number of representatives from the Hawaii, Maui and Kauai "basic areas," which basic areas have a certain significance in the application of the aforesaid method. The county attorneys of Hawaii, Maui and Kauai, appearing however as electors *in propria persona* and not as county attorneys, make the additional contention that the reapportionment sought by the plaintiffs would be in denial of their rights as electors in these basic areas.

The defendant officers and the intervening defendants all contend that the Governor of the Territory of Hawaii is without power to reapportion the state legislature. However, as to the Secretary of the Territory, under whose direction the elections will be conducted, this officer is proceeding in accordance with paragraph 8 of the proclamation of April 15, 1959, which designates the number of representatives for the respective districts in accordance with Article XVI, section 1 of the constitution. On that account, and because the Governor's proclamation of May 1, 1959, had directed him to so proceed, the Secretary refused the demands made by the plaintiffs and purposes proceeding accordingly unless otherwise directed by this court.

By his proclamation of May 1, 1959, the Governor of the Territory of Hawaii purported to exercise all of the reapportionment powers he possesses and therein reaffirmed his position that, as territorial governor, he is empowered to reapportion only the territorial legislature in accordance with Public Law 895, approved August 1, 1956, amending the Hawaiian Organic Act, and that the provisions thereof with respect to reapportionment would be effective "* * * with respect to the Thirty-first Legislature of the Territory of Hawaii and applied to each Legislature thereafter" which under territorial status would be elected in November, 1960.

The question before the court is whether the Enabling Act (Public Law 86-3) permitting Hawaii to vote upon statehood and elect state officials requires that members of the house of representatives of the first state legislature be elected on the re-apportioned basis as required by section 4, Article III, of the constitution for the proposed State of Hawaii, or whether the reappor-' tionment should go into effect in the elections of 1960.

The constitution for the proposed State of Hawaii, hereinafter referred to as the "constitution," sets forth in general terms the procedure to be followed in calling, holding, and making the terms of election of the first officials of the State and prescribes the term of office for the persons initially elected. It also provides that on or before June 1 of the year 1959, and of each tenth year thereafter, the Governor shall reapportion the members of the house of representatives in a prescribed manner. It then sets forth a formula to be applied within the four described basic areas.

The Enabling Act providing for the admission of Hawaii into the Union, subject to approval by the voters of the Territory, sets forth the steps to be taken for such approval and for the election of state officers provided for by the constitution of the proposed State of Hawaii and for two senators and one representative in the Congress. The Act requires the Governor of the Territory, within thirty days after receipt of official notification of the President of the United States, to issue his proclamation for the election of such officers; the proclamation of the Governor of Hawaii shall provide for the holding of a primary election and a general election; that *"Such elections shall be held,* and the qualifications of voters thereat shall be, *as prescribed by the constitution* of the proposed State of Hawaii for the election of members of the proposed State legislature." (Section 7.) (Emphasis added.)

The Enabling Act, in requiring elections for the first state legislature to be held as prescribed by the constitution of Hawaii incorporated the election provisions of the constitution into the congressional law.

"It is a general principle of law that in adopting a statute the Legislature or Congress may do so by reference, as well as by setting out the statute at length, and even where the statute

adopted is the statute of another state or territory the principle is the same." (*Ex parte Burke,* 190 Cal. 326, 328, 212 Pac. 193.)

The effect of such reference, as stated in *Hasset* v. *Welch,* 303 U. S. 303, 314, 82 L. Ed. 858, 866 (quoting from 2 Lewis, Sutherland Statutory Construction, pp. 787-88):

"* * * is the same as though the statute or provision adopted had been incorporated bodily into the adopting statute * * *."

Although the constitution of the proposed State of Hawaii would not normally and in due course become effective until Hawaii in fact and in law becomes a State, nevertheless, by the provisions of Public Law 86-3, the so-called "Enabling Act," immediate effectiveness has—by incorporation therein by reference—been given to the provisions of said constitution in respect to how the forthcoming elections, of June 27 and July 28, 1959, shall be held and what shall be the qualifications of voters thereat. The constitution of the proposed State of Hawaii has not become effective, but only the language and provisions thereof pertinent and applicable to the elections, as though such language and provisions were set forth in full (*in totidem verbis*) in Public Law 86-3, and thus with the Act itself became effective upon the approval of the Act on March 18, 1959.

Thus, the Enabling Act of the Congress gave effect not only to the election provisions of the constitution but to the election laws of the Territory in general. This latter was made necessary because neither the Enabling Act nor the constitution contains all of the laws governing elections.

Obviously, the "laws relating to the election of members of the legislature at primary and general elections" refers to the Hawaiian laws, that is, existing primary and general election laws, and territorial laws enacted to regulate the election of the first state legislature.

Act 191, Session Laws of Hawaii 1955, incorporated in the election laws the constitution in lieu of the Organic Act. However, there is nothing inconsistent between the constitution and the Organic Act, as amended by Congress by Public Law 895, approved

August 1, 1956, as both contain virtually identical provisions governing the number of members of the house, the boundaries of the representative districts, and the distribution and reapportionment of the representatives among representative districts.

As stated, the elections to be held in June and July are held only by the authority, and under the direction, of the Congress; that Congress has plenary power over the Territory as long as it continues a Territory is elementary and, as such, it may settle the terms of admission of a Territory as a State. (See *Brittle* v. *The People,* 2 Neb. 198.)

> "The general rule that Constitutions and constitutional amendments take effect upon their ratification by the people, unless otherwise provided in the instrument itself or the resolutions submitting them, applies to sovereign states possessing the power to make and unmake Constitutions, but has no application to territories, as they do not possess the power within themselves to initiate a separate form of government." (*Farrar* v. *St. Louis & S. F. R. Co.,* 149 Mo. App. 188, 130 S. W. 373.)

The contention that the Congress cannot define the qualification of the voters of the first state officers ignores the fact of the plenary power of Congress over Territories. The case of *Anderson* v. *Tyree,* 12 Utah 129, 153, 42 Pac. 201, 204, states:

> "The contention that Congress cannot define the qualifications of voters for the first state officers, elected conditionally, while the territorial condition continues, because no such power exists as to the states, is clearly erroneous. It is too much like comparing the authority of a parent before and after the majority of his child. While the territorial condition continues, whatever political power its people exercise must be by authority of Congress. In all governmental affairs, whatever the people of a territory do must be authorized, and they must abstain from doing what is forbidden. Their elections, even on subjects relating to statehood, are territorial elections, and their voters are the electorate of the territory."

Governor Quinn has caused such a reapportionment of the members of the house of representatives to be made among the rep-

resentative districts as required by section 4 of Article III of the constitution for Hawaii. He has also issued a proclamation showing the result of such reapportionment, but he has stated that this reapportionment shall not be effective for the elections to be held in June and in July 1959, and has ordered that in those elections the members of the house of representatives be nominated and elected in accordance with the existing apportionment of the house of representatives. The Secretary of Hawaii has given notice that he intends to conduct the elections in that way, and the question is whether such postponement is properly taken under the laws of Hawaii and of the Congress.

So, the argument that the Governor has no authority under the state constitution to reapportion is fallacious in that the action of the Congress is a mandate to the Governor.

If the Governor cannot reapportion so as to take effect at the present elections (territorial), certainly he cannot make a reapportionment that will only take effect after Hawaii becomes a State. He acts as a territorial Governor under a mandate of the Congress to proceed with the elections in accordance with provisions of the constitution for the proposed State of Hawaii.

The Congress has both the power and intent to put into permanent effect the reapportionment provisions of the constitution. There is no reason why these provisions cannot be given effect during the transition period from territorial to state status.

The Enabling Act requires that the forthcoming elections for representatives shall be held according to the constitution and election laws of Hawaii, and the constitution requires that elections for the next five succeeding legislative sessions after June 1, 1959, shall be conducted on the reapportioned basis. The reapportionment made by the territorial Governor before such date pursuant to the laws of the Territory is, therefore, in accordance with the provisions of the constitution by reference incorporated in Public Law 86-3 and the mandate of Congress therein and in Public Law 895.

Not to make the reapportionment would ignore the plain language of the constitution, of the Organic Act and of the Enabling Act of the Congress, and defeat the intent of the people of Hawaii

as expressed in the approved constitution, and the acts of the territorial legislature as expressed in the laws of 1955.

Plaintiffs are sustained. Let judgment issue substantially as provided in all of item X, pages 17-19, of the Submission, other than the last paragraph thereof on page 19.

*Clinton R. Ashford* and *C. Nils Tavares* (*William B. Stephenson, A. James Wriston, Jr., Tobias C. Tolzmann & Maurice Sapienza* with them on the briefs) for plaintiffs.

*Rhoda V. Lewis* and *Jon Chinen,* Deputy Attorneys General (*Henry H. Shigekane & Yoshio Shigezawa,* Deputy Attorneys General, with them on the briefs) for defendants.

*Harold L. Duponte,* intervening defendant, filed a brief in propria persona, but did not argue.

*T. S. Goo* and *Ernest Y. Yamane* filed a brief for *Yoshito Tanaka, Toshio Kabutan, Ernest Y. Yamane, Morio Omori & T. S. Goo,* intervening defendants, but waived argument.

*Jack H. Mizuha,* Attorney General, present.

---

DISSENTING OPINION OF MARUMOTO, J.

The question in difference in this submission concerns the applicability of the reapportionment provision of Article III, Section 4, of the constitution to the first State elections. I use the term "constitution" to mean the constitution of the State of Hawaii drafted by the constitutional convention convened under Act 334, Session Laws of Hawaii 1949, and adopted by a vote of the people of this Territory on November 7, 1950; and I use the expression "first State elections" to mean the primary election to be held on June 27, 1959, and the general election to be held on July 28, 1959, for officers of all State elective offices provided for by the constitution, pursuant to sections 6 and 7(a) of Public Law 86-3, 86th Congress, approved March 18, 1959.

The legal problem posed by the submission is basically the construction of section 7(a) of Public Law 86-3. Specifically, it is to determine whether section 7(a) has incorporated into it the reapportionment provisions of Article III, Section 4, in such manner that the first State elections for the members of the house of rep-

resentatives of the State legislature must be held on a reapportioned basis. Any construction of the constitution that may be necessary is incidental to the solution of the main problem.

No question has been raised as to the jurisdiction of this court to construe Public Law 86-3, and I assume there is none. (*Dougherty* v. *Michigan Bell Telephone Co.*, 235 Mich. 416, 209 N.W. 200, *Gerry of California* v. *Superior Court*, 32 Cal. [2d] 119, 194 P. [2d] 689.)

The first State elections will take place before the Territory is admitted as a State. They are required by Public Law 86-3 as a prerequisite to admission. Section 6 mandates the governor of the Territory to issue a proclamation, as provided in section 7(a), for the elections "for officers of all State elective offices provided for by the constitution of the proposed State of Hawaii." Section 7(a) requires that the proclamation provide for the holding of a primary election and a general election at which the officers required to be elected as provided in section 6 shall be chosen by the people and that "Such elections shall be held * * * as prescribed by the constitution of the proposed State of Hawaii for the election of the members of the proposed State legislature."

Article III, Section 4, of the constitution provides that on or before June 1, 1959, and of each tenth year thereafter, the governor shall reapportion the members of the house of representatives on the basis of the number of voters registered at the last preceding general election within each of the representative districts, that the governor shall thereupon issue a proclamation showing the results of such reapportionment, and that such reapportionment shall be effective for the election of the members of such house for the next five succeeding legislatures. The governor, mentioned in this provision, is the governor of the State.

For the first State elections to be held on a reapportioned basis, the provisions of Article III, Section 4, must be incorporated in the law that governs the elections with an amendment that enables some person other than the governor of the State to effect the reapportionment. Plaintiffs say that this has been done. As I understand their argument, which has been accepted by the majority of this court, it runs as follows:

(a) Section 7(a) requires the first State elections to be held "as prescribed by" the constitution.

(b) Such requirement incorporates in section 7(a) by reference the exact words of Article III, Section 4.

(c) The language of Article III, Section 4, as incorporated in section 7(a), stands on its own and may be construed without reference to any context.

(d) The word "governor" is used in Article III, Section 4, without any qualifying word or phrase that it means the governor of the State, and so it may be construed to mean the governor of the Territory.

(e) If the word "governor" is construed to mean the governor of the Territory, then section 7(a), which has incorporated into it the exact words of Article III, Section 4, mandates the governor of the Territory to effect the reapportionment on or before June 1, 1959, on the basis of the number of voters registered at the last general election of the Territory held in November 1958.

I do not think that the phrase "as prescribed by" effects an incorporation by reference of the exact words of a legal provision, stripped completely out of context. I think that where a legal provision is incorporated by reference by such phrase, what is incorporated is not the exact words of the provision taken completely out of context but the true sense of the provision gathered from the construction of the words in their proper contexts. The dictionary meaning of the word "prescribe" is to lay down authoritatively as a guide, direction or a rule of action. (Webster's New International Dictionary, 2d Edition; *Koenig* v. *Flynn*, 258 N.Y. 292, 179 N.E. 705; *State* v. *Holm*, 184 Minn. 228, 238 N.W. 494; *Sevier* v. *Riley*, 198 Cal. 170, 244 Pac. 323.) The rule of action authoritatively laid down by Article III, Section 4, is that the governor of the State shall reapportion the members of the State house of representatives, not that the governor of the Territory shall do so.

It is stated in *Taft* v. *Adams*, 69 Mass. (3 Gray) 126, 131, that "When one statute thus refers to another, to avoid the prolixity arising from a repetition of all the provisions of the act referred

to, it must be construed with this qualification, that the provisions of the act referred to shall be applied in all those particulars, in which they can be applied without leading to absurd results; * * *"

In section 1 of Public Law 86-3, Congress accepted, ratified and confirmed the constitution. The presumption is that it did so with full knowledge and understanding of the provisions of the document. I assume that its understanding of Article III, Section 4, as a constitutional provision is that it is a mandate to the governor of the State. If Congress in fact incorporated the language of Article III, Section 4, in section 7(a) by reference, it is reasonable to presume that it did so with the same understanding. It is absurd to suppose that Congress construed a legal provision in one way as a provision in a state constitution and in another way as a provision incorporated by reference in a law enacted by it.

Furthermore, if the reference to the constitution in section 7(a) incorporated into that section the language of Article III, Section 4, *in totidem verbis*, as stated in the opinion of the court, such incorporation must have included not only the first and second paragraphs which impose the duty of making the reapportionment and issuing a proclamation regarding the results of the reapportionment upon the governor but also the third paragraph which makes that duty enforceable by mandamus from the "supreme court of the State." The provision for enforcement by mandamus from the supreme court of the State requires that the word "governor," as used in the first and second paragraphs, be read to mean the governor of the State.

My opinion is that Article III, Section 4, is not incorporated in section 7(a). The constitution contains a provision that is specially applicable to the first State elections. Article XVI, section 11, provides that "Such elections shall be held * * * as prescribed by this constitution and by the laws relating to the election of members of the legislature at primary and general elections." Section 7(a) regulates only the first State elections. Thus, I think that when Congress provided in section 7(a) that the elections shall be held "as prescribed by the constitution of the proposed State of Hawaii for the election of members of the proposed State legislature," it had specific reference to Article XVI, Section 11.

The provision of Article XVI, Section 11, that the first State elections be held as prescribed by the constitution requires an examination of the applicable constitutional provisions. Insofar as the elections for the members of the house of representatives of the State legislature are concerned, the starting point for such examination is Article III, Section 3 which provides that the house of representatives shall be composed of fifty-one members and that until the next reapportionment the representative districts and the number of representatives to be elected from each district shall be as set forth in the Schedule. Article XVI, Section 1, is the Schedule. It describes the representative districts and the number of members to be elected from each district until the next reapportionment. A search for the provision for the next reapportionment leads to Article III, Section 4, previously discussed to some extent. It mandates the governor of the State to make the reapportionment on or before June 1, 1959, but the mandate cannot be carried out because there is no such official at the present time. The governor of the Territory is not the same as the governor of the State. True, the method of reapportionment provided in Article III, Section 4, is virtually automatic. But the function of making the reapportionment is specifically imposed on the governor of the State as a ministerial duty enforceable by mandamus from the supreme court of the State. Inasmuch as there is as yet no "next reapportionment," compliance with the self-executing apportionment provision in Article XVI, Section 1, will meet the requirement of Article XVI, Section 11, that the elections be held as prescribed by the constitution.

By Public Law 895, 84th Congress, approved August 1, 1956, the apportionment provisions of the Hawaiian Organic Act were brought in line with the constitution. Under its mandate that the members of the house of representatives of the Territorial legislature shall be reapportioned on or before June 1, 1959, the governor of the Territory has already made the reapportionment, applicable to the Thirty-first Legislature of the Territory to be elected in November 1960 and to subsequent Territorial legislatures. The Thirtieth Legislature will not go out of existence until the Thirty-first Legislature comes into being, unless in the meantime statehood becomes a reality for this Territory.

The reapportionment made by the governor of the Territory will not apply to the first State elections, which are not held under the Organic Act but under Public Law 86-3. The Organic Act applies only to the elections for the members of the Territorial legislature. Congress has the power to make it applicable to the first State elections, but it has not done so.

In my opinion, the requirement of Article XVI, Section 11, that the first State elections shall be held as prescribed by the laws relating to the elections of members of the legislature at primary and general elections does not include the Organic Act. That requirement refers to the procedural requirements in connection with primary and general elections in chapters 6 and 7 of the Revised Laws of Hawaii 1945, which are now compiled in chapter 11 of the Revised Laws of Hawaii 1955. The procedural provisions that were in existence at the time of the adoption of the constitution did not quite fit the requirements of the first State elections. So, the Twenty-eighth Legislature enacted Act 191 of the Session Laws of Hawaii 1955, which contains special provisions, applicable to such elections. Act 191 declared that for the first State elections the constitution shall be the prevailing law in lieu of the Organic Act. The power of the Territorial legislature to make such declaration may be questioned. However, when Congress provided in section 7(a) that the first State elections shall be held as prescribed by the constitution, it may be presumed that it did so with full knowledge of the existence of Act 191 and in acceptance of all of the provisions of the act, including the declaration in question. In *France* v. *Conner*, 161 U.S. 65, 72, the Supreme Court of the United States stated: "Although Congress has the undoubted power to annul or modify at its pleasure the statutes of any Territory of the United States, yet an intention to supersede the local law is not to be presumed, unless clearly expressed."

In the consideration of the question in difference in this submission, the intention of the constitutional convention in drafting Article III, Section 4, is immaterial, and the intention of the people of this Territory in adopting the constitution is likewise immaterial, for the construction of the constitution is not before this court. So, also is the Congressional intent in enacting Public Law 895, for the issue before this court is not the construction of the Organic

Act. The sole issue in the submission is the contruction of section 7(a), and the only intent that is material is the intent of Congress in connection with that section.

There is nothing from which we can say that Congress intended that the first State elections be held on a reapportioned basis. Normally, the first legislature elected on a reapportioned basis, whether under the constitution or under the Organic Act, will meet in February 1961. But the legislature elected in the first State elections is expected to meet in August of this year. In all likelihood Congress did not give any thought to the contingency that the first State elections might be held after June 1, 1959, when it enacted Public Law 86-3. If it had thought about it, it might well have provided that the elections be held on a reapportioned basis. But we have no warrant to base our decision on a conjecture. In the absence of other basis for decision, our action must be based on the language of the statute as written. My position may appear technical. But I follow the admonition of the judges whose liberal turn of mind has never been questioned. In *Ebert* v. *Poston,* 266 U.S. 549, 554, Mr. Justice Brandeis stated: "The judicial function to be exercised in construing a statute is limited to ascertaining the intention of the legislature therein expressed. A *casus omissus* does not justify judicial legislation." Likewise, Mr. Justice Cardozo stated in *New York Life Insurance & Trust Co.* v. *Winthrop,* 237 N.Y. 93, 109: "In all likelihood, he simply failed to think the subject through. We find no reason for supposing that he had any intention either way except the general one that his words should be interpreted in conformity with law." That was said in connection with the construction of a will, not a statute, but the principle is the same.

Some mention has been made of the comparative equities of the voters of the various representative districts. Plaintiffs concluded their opening brief with the following quotation from *Shillaber* v. *Waldo,* 1 Haw. 31, 32: "Let justice be done though the heavens fall." The heavens will not fall whichever way this case is decided; and I do not think that equities preponderate one way or the other. I am also cognizant of the futility of dissents, for the voice of the majority is the voice of the court. But, with due regard to the majority, thinking as I do, I will be less than intellectually honest if I do not state my view and register my dissent.