98 P.3d 233

**HAWAII PROVIDERS NETWORK, INC., Plaintiff–Appellant**

v.

**AIG HAWAII INSURANCE COMPANY, INC.;** Allstate Insurance Co.; Allstate Indemnity Co.; American Automobile Insurance Company; American Insurance Company; Associated Indemnity Corp.; Budget Rent–A–Car Systems, Inc.; Dai–Tokyo Royal State Insurance Company, Limited; Fireman's Fund Insurance Company of Hawaii, Inc.; First Indemnity Insurance of Hawaii, Inc.; First Insurance Company of Hawaii, Ltd.; Geico Indemnity Co.; Geico Casualty Co.; Government Employees Insurance Company; Hartford Accident and Indemnity Company; The Hawaiian Insurance and Guaranty Company, Limited; Island Insurance Company, Ltd.; Liberty Mutual Fire Insurance Company; Liberty Mutual Insurance Co.; National Surety Corp.; Progressive Casualty Insurance Company; Progressive Hawaii Insurance Corp.; Progressive Northern Insurance Company; Progressive Northwestern Insurance Company; Progressive Specialty Insurance Company; Royal Insurance Company of America; State Farm Mutual Automobile Insurance Co.; TIG Insurance Company; TIG Premier Insurance Company; Tokio Marine and Fire Insurance Co., Ltd.; Tradewind Insurance Company; Travelers Insurance Co.; USAA Casualty Insurance Co.; Defendants–Appellees

and

**State National Insurance Company; RLI Insurance Co.; Star Insurance Co; Tradewinds U-drive, Inc.; John and Jane Does 1–10; Doe Corporations 1–10; Doe Partnerships 1–10 and Doe Entities 1–10, Defendants.**

No. 23790.

Supreme Court of Hawai'i.

Aug. 26, 2004.

As Amended on Denial of Reconsideration Oct. 5, 2004.

Paul Maki and Ronald J. Verga (Edmunds Maki Verga & Thorn), Honolulu, on the briefs, for plaintiff-appellant.

Richard B. Miller and Wayne H. Muraoka (Tom Petrus & Miller, LLLC), Honolulu, on the briefs, for defendants-appellees AIG Hawaii Ins. Company, Inc., Dai–Tokyo Royal Insurance Company, Budget Rent–a–Car Systems, Inc., First Indemnity Insurance of Hawaii, Inc., First Insurance Company of Hawaii, Inc., Geico Indemnity Co., Geico Casualty Co., Government Employees Insurance Company, Liberty Mutual Fire Insurance Company, Liberty Mutual Insurance Co., Progressive Casualty Insurance Company, Progressive Hawaii Insurance Corp., Progressive Northern Insurance Company, Progressive Northwestern Insurance Company, Progressive Specialty Insurance Company, TIG Insurance Company, TIG Premier Insurance Company, Tokio Marine and Fire

Insurance Co., Ltd., The Hawaiian Insurance and Guaranty Company, Island Insurance Company, Ltd. and Tradewind Insurance Company, Ltd.

Kevin P.H. Sumida and James H. Monma (Matsui Chung Sumida & Tsuchiyama), Honolulu, on the briefs, for defendants-appellees Allstate Ins. Co. and Allstate Indemnity Co.

Keith K. Hiraoka and Randall K. Ishikawa (Roeca Louie & Hiraoka), Honolulu, on the briefs, for defendants-appellees American Automobile Ins. Co., American Insurance Co., Fireman's Fund Ins. Co. of Hawaii, Inc., Associated Indemnity Corp., National Surety Corp., and Royal Ins. Company of America.

Jeffrey H.K. Sia and Gary S. Miyamoto (Ayabe Chong Nishimoto Sia & Nakamura), Honolulu, on the briefs, for defendants-appellees Hartford Accident and Indemnity Co. and Travelers Ins. Co.

John Y. Yamano, Darolyn Hatsuko Lendio, and Stacey M. Robinson (McCorriston Miller Mukai MacKinnon LLP), Honolulu, on the briefs, for defendant-appellee State Farm Mutual Automobile Ins. Co.

Michael F. O'Connor (Oliver Lau Lawhn Ogawa & Nakamura), Honolulu, on the briefs, for defendant-appellee USAA Casualty Ins. Co.

MOON, C.J., LEVINSON, NAKAYAMA, ACOBA, and DUFFY, JJ.

Opinion of the Court by ACOBA, J.

■ We hold that Hawai'i Revised Statutes (HRS) § 431:10C–308.5 (1993) which referred to the worker compensation treatment schedules adopted by the director (director) of the Department of Labor and Industrial Relations (DLIR) in the Hawai'i Administrative Rules (HAR) as the schedules governing the amount of payments to providers of no-fault benefits under motor vehicle insurance policies must be construed as having generally incorporated the worker compensation fee schedules as they may have been adopted and amended from time to time. Accordingly, after the director repealed HAR Title 12, chapter 13, referred to in HRS § 431:10C–308.5(a), and adopted in 1996, HAR Title 12, chapter 15, the latter became the fee schedule governing payments to no-fault benefit providers under HRS § 431:10C–308.5.

Because the September 12, 2000 judgment of the first circuit court (the court)[1] granting summary judgment in favor of Defendants–Appellees insurance companies[2] and against Plaintiff–Appellant Hawaii Providers Network (HPN) was consistent with the foregoing, we affirm the said judgment.

## I.

In 1992, the Legislature amended the motor vehicle insurance law. These amendments were generally enacted "with the intent of reducing and stabilizing the soaring cost of motor vehicle insurance in this State." Sen. Conf. Comm. Rep. No. 161, in 1992 Senate Journal, at 825. In this regard, the existing workers' compensation fee schedule was adopted as the payment fee schedule applicable to medical and rehabilitative services provided as no-fault benefits, HRS § 431:10C–103(10)(A),[3] for persons injured in

---

1. The Honorable Gail Nakatani presided.

2. Defendants–Appellees are insurance carriers Allstate Insurance Company, RLI Insurance Company, USAA Casualty Insurance Company, Geico Indemnity Company, Geico Casualty Company and Government Employees Insurance Company, Hartford Accident and Indemnity Company, Travelers Insurance Company, Dai–Tokyo Royal Insurance Company, AIG Hawaii Insurance Company, Budget Rent–A–Car Systems, First Indemnity Insurance of Hawaii, Progressive Insurance Corporation, Progressive Northern Insurance Company, Progressive Northwestern Insurance Company, Progressive Specialty Insurance Company, Star Insurance Company, Tokio Marine and Fire Insurance, Liberty Mutual Insurance Company, Liberty Mutual Fire Insurance Company, Hawaiian Insurance and Guaranty Company (collectively Defendants).

3. HRS § 431:10C–103(10)(A) states in relevant part:

> (A) No-fault benefits, sometimes referred to as personal injury protection benefits, with respect to any accidental harm means:
> (i) All appropriate and reasonable expenses necessarily incurred for medical, hospital, surgical, professional, nursing, dental ...;
> (ii) All appropriate and reasonable expenses necessarily incurred for psychiatric, physical, and occupational therapy and rehabilitation; ....

automobile accidents. This provision which was part of Act 123 (1992 Session Laws of Hawai'i) became effective on January 1, 1993 as HRS § 431:10C–308.5(a) and (b).[4] It stated in relevant part that:

(a) As used in this article, *the term "workers' compensation schedules" means the schedules adopted and as may be amended by the director of labor and industrial relations for workers' compensation cases* under chapter 386, establishing fees and frequency of treatment guidelines *and contained in sections 12–13–30, 12–13–35, 12–13–38, 12–13–39, 12–13–45, 12–13–85 through 92, and 12–13–94, Hawaii administrative rules.* References in the workers' compensation schedules to "the employer", "the director", and "the industrial injury", shall be respectively construed as references to "the insurer", "the commissioner", and "the injury covered by no-fault benefits" for purposes of this article.

(b) Effective January 1, 1993, the charges and frequency of treatment for services specified in section 431:10C–103(10)(A)(i) and (ii), except for emergency services provided within seventy-two hours following a motor vehicle accident resulting in injury, *shall not exceed the charges and frequency of treatment permissible under the workers' compensation schedules, except as provided in section 431:10C–308.6. . . . The [insurance] commissioner may adopt administrative rules relating to fees or frequency of treatment for injuries covered by no-fault benefits. If adopted, these administrative rules shall prevail to the extent that they are inconsistent with the workers' compensation schedules.*

(Emphases added.) The legislative intent was to "[e]stablish[ ] a medical fee schedule which limits charges and frequency of medical services and treatment [for purposes of no-fault coverage] by adopting, *by reference,* the workers' compensation fee schedule and guidelines." Sen. Conf. Comm. Rep. No. 161, in 1992 Senate Journal, at 826 (emphasis added). The Legislature also indicated that "[m]edical cost containment . . . will be accomplished by adoption of a fee schedule modeled on the workers' compensation medical fee schedule." Hse. Stand. Comm. Rep. No. 1271–92, in 1992 House Journal, at 1391. At that time the workers' compensation fee schedule was contained in HAR Title 12, chapter 13. Therefore, pursuant to HRS § 431:10C–308.5, the workers' compensation fee schedule in Title 12, chapter 13 was adopted and made effective for no-fault purposes as of January 1, 1993.[5]

Subsequently, the Insurance Commissioner (the commissioner) promulgated new administrative rules consistent with HRS § 431:10C–308.5 under Title 16, chapter 23, "Motor Vehicle Insurance Law," HAR. HAR § 16–23–115 (1993)[6] which became effective

---

4. HRS § 431:10C–308.5 was first enacted in 1992 as HRS § 431:10C–B entitled "Limitation on charges" by Act 123. 1992 Session Laws of Hawaii, at 202–03.

5. The preamble dated January 1, 1993 for HAR Title 12, Chapter 13 stated that:

This medical fee schedule (Title 12, Chapter 13) has been adjusted for calendar year 1993 in accordance with Section 386–21 of the Workers' Compensation Law to reflect the increase in the Consumer Price Index for the Honolulu Region which occurred during the period July 1, 1991 through June 30, 1992.

The increase in the Consumer Price Index during this applicable period was 4.8 percent. Accordingly, the calculated "value of one unit" for the applicable period is $31.58. The fee for each procedure should be computed by multiplying its "unit value" by $31.58. All computed fees should be rounded to the next higher multiple of .10$.

Any inquiries concerning the Fee Schedule herein established should be made with the Administrator or the Medical Advisor of the Disability Compensation Division.

*DO NOT DISCARD THIS FEE SCHEDULE. UNIT VALUES FOR 1994 AND 1995 WILL BE PUBLISHED ON JANUARY 1, 1994 AND JANUARY 1, 1995.*

UNIT VALUE FOR 1993 = $ 31.58
UNIT VALUE FOR 1994 = $ 34.56
UNIT VALUE FOR 1995 = $ 33.54

NOTE: Medical care pursuant to section 431–10C, Hawaii Revised Statutes relating to Motor Vehicle Insurance Law, is governed by section 16–23, Hawaii Administrative Rules. All inquiries should be directed to the Department of Commerce and Consumer Affairs.

6. HAR § 16–23–115 states:

(a) *Exhibit A at the end of Title 12, Chapter 13, entitled "Workers' Compensation Medical Fee Schedule," is made a part of this chapter and*

on June 1, 1993, adopted the fee schedule contained in HAR Title 12, chapter 13 for no-fault purposes.

In 1995, the Legislature amended the workers' compensation laws to provide that charges for medical and rehabilitative services rendered to recipients of workers' compensation benefits shall not exceed 110% of the fees set by the federal government's Medicare schedule. This provision was section 7 of Act 234 (1995 Session Laws of Hawai'i) and is codified as HRS § 386–21(c). HRS § 386–21(c) (Supp.1995) provides in relevant part:

> (c) *As of June 29, 1995,* and for each succeeding fiscal year thereafter, the *charges shall not exceed one hundred ten percent of fees prescribed in the Medicare Resource Based Relative Value Scale system applicable to Hawaii* as prepared by the United States Department of Health and Human Services, except as provided in this subsection.

(Emphases added).

Following the adoption of Act 234, the commissioner issued a memorandum dated August 7, 1995 addressed to "All Motor Vehicle Insurers Licensed in Hawaii" regarding the "Medicare Fee Schedule Applicable to No–Fault Claims". This memorandum stated that

> *In Section 7 of Act 234, the Workers' Compensation Medical Fee Schedule contained in Title 12, Chapter 13, HAR, ... was replaced by the Medicare Fee Schedule.* More specifically, the Act mandates that charges for medical care, services, and supplies shall not exceed one hundred ten percent of fees prescribed in the Medical Resource Based Relative Value Scale system as prepared by the United Stated

Department of Health and Human Services (Medicare Fee Schedule).

(Emphases added).

Pursuant to the change in the workers' compensation fee schedule, the commissioner instructed insurers that

> *effective June 29, 1995, charges for services specified in section 431:10C–103(10)(A)(i) and (ii), HRS,* except of emergency services provided within seventy-two hours following a motor vehicle accident, *shall not exceed one hundred ten per cent of the participating fees prescribed in the Medicare Fee Schedule.*

(Emphases added).

The commissioner reiterated the instructions contained in the August 7, 1995 memorandum in a subsequent, September 25, 1995 memorandum. The September memorandum stated that payments for medical and rehabilitative serviced provided under no-fault coverage shall not exceed 110% of the charges prescribed in the Medicare fee schedule. The commissioner also noted that since the governor's approval of Act 234 on June 29, 1995, the Insurance Division had been "inundated with questions and complaints regarding medical fees[,]" and that while Act 234 was signed into law on June 29, 1995, "the proposed medical fee schedule rules have yet to be approved with the Department of Labor and Industrial Relations." Thus, the commissioner instructed that pending the DLIR's approval of the new medical fee schedule, "we encourage all parties to reasonably negotiate the medical fees."

The DLIR formally approved the workers' compensation fee schedule, conforming its regulations to the mandates of Act 234, by repealing HAR Title 12, chapter 13 effective

---

shall be used to determine the maximum allowable fees using the procedure codes and unit values established by the department of labor and industrial relations pursuant to section 386–21, HRS.

(b) For the purposes of this section "private patient" means a patient not covered by insurance. No provider shall charge a fee in excess of that charged to a private patient plus ten per cent of the private patient charge (for compensation for no-fault procedural requirements). Upon request by the insurer, a provider shall submit a statement itemizing the private patient charges for services and supplies furnished to the claimant during a one-year period preceding the date of the request. Requests shall be submitted in writing within twenty days of receipt of a charge allegedly in excess of the allowable amount. The provider shall reply in writing within ten days of receipt of the request.

(c) This section supersedes section 12–13–92, as it applies to injuries covered by no-fault benefits.

(Emphasis added.)

January 1, 1996 and adopting Title 12, chapter 15 on the same date.[7] Thus, as of January 1, 1996, Title 12, chapter 15 established that the permissible workers' compensation fee schedule charges not exceed 110% of the Medicare level as required by HRS § 386–21.

Subsequently, the commissioner amended the no-fault administrative rules, HAR § 16–23–115 (1998),[8] to reflect the earlier adoption of Title 12, chapter 15 by the director. The new rules took effect on January 1, 1998.

In 1997 and 1998, HRS § 431:10C–308.5 was amended. However, the language referring to HAR Title 12 chapter 13 in the statute was not deleted.

On November 17, 1999, HPN as the assignee of the claims of approximately 550 Hawai'i health care providers who provided "personal injury protection benefits," as defined in HRS § 431:10C–103.5, to "insureds," as defined in HRS § 431:10C–103 [9] from 1995 to 2000 filed a complaint against Defendants, as "insurers".[10] The complaint alleged that Defendants' insureds sustained injuries as a result of the operation, maintenance or use of an insured vehicle and thereafter received medical or other services from one or more of HPN's assignors; and that after the repeal of HAR Title 12 chapter 13, Defendants improperly paid reduced amounts for services based on the new workers' compensation fee schedule established in HAR Title 12 chapter 15. The complaint requested that HPN be awarded "the amount equal to the difference between what defendants paid to Plaintiffs' Assignors and that amount legally owed to Plaintiff's Assignors under the 'workers' compensation schedules' as defined in Section 431:10C–308.5, H.R.S., together

---

**7.** The preamble dated January 1, 1996 to HAR Title 12, chapter 15 stated:

> *Title 12, Chapter 13 Workers' Compensation Medical Fee Schedule has been repealed effective January 1, 1996 and this medical fee schedule (Title 12, Chapter 15) has been adopted and is effective January 1, 1996.*
>
> The calculated "value of one unit" is $33.54 based on the unit value for 1995. The fee for each procedure should be computed by multiplying its "unit value" by $33.54.
>
> *Medical care pursuant to section 386–21, Hawaii Revised Statutes, relating to the Workers' Compensation Law, is governed by Title 12, Chapter 15, Hawaii Administrative Rules.* Any inquiries concerning the Medical Fee Schedule herein established should be directed to the Disability Compensation Division. For copies of the Medicare Fee Schedule Relating to workers' compensation, contact the Disability Compensation Division office on your island. *DO NOT DISCARD THIS FEE SCHEDULE* NOTE: Medical care pursuant to section 431–10C, Hawaii Revised Statutes, relating to Motor Vehicle Insurance Law, is governed by chapter 16–23, Hawaii Administrative Rules. All inquiries should be directed to the Department of Commerce and Consumer Affairs.
> (Emphases added.)

**8.** HAR § 16–23–115(a) states:

> (a) *Charges for medical services shall not exceed one hundred ten percent of participating fees prescribed in the Medicare Resource Based Relative Value Scale System applicable to Hawaii (Medicare Fee Schedule)* or Exhibit A at the end of Title 12, Chapter 15, entitled "Workers' Compensation Supplemental Medical Fee Schedule" (Exhibit A). The Medicare Fee Schedule and Exhibit A, together herein referred to as the "medical fee schedule," is made a part of this chapter and shall be used to determine the maximum allowable fees using the procedure codes and unit values established by the department of labor and industrial relations pursuant to section 386–21, HRS. *Any subsequent amendment by the department of labor and industrial relations to the Medicare fee schedule and Exhibit A, shall be incorporated into this chapter by reference.*
> (Emphases added.)

**9.** HRS § 431:10C–103 (Supp.2003) states in relevant part:

> "Insured" means:
> (1) The person identified by name as insured in a motor vehicle insurance policy complying with section 431:10C–301; and
> (2) A person residing in the same household with a named insured, specifically:
> (A) A spouse or reciprocal beneficiary or other relative of a named insured; and
> (B) A minor in the custody of a named insured or of a relative residing in the same household with a named insured.
> A person resides in the same household if the person usually makes the person's home in the same family unit, which may include reciprocal beneficiaries, even though the person temporarily lives elsewhere.
> Although HRS § 431:10C–103 was amended in 1997, 1998, 1999 and 2000, the definition of "insured" remained substantially the same.

**10.** HRS § 431:10C–103 states that "'insurers' means every person holding a valid certificate of authority to engage in the business of making contracts of motor vehicle insurance in this

with an award of interest, costs, [and] attorneys' fees...." [11]

In 2000, the Legislature adopted Act 138, effective May 30, 2000 [12] which amended HRS § 431:10C–308.5 by, among other things, deleting the references to HAR Title 12, chapter 13. The current version of HRS § 431:10C–308.5 (Supp.2003) provides in relevant part as follows:

(a) As used in this article, the *term "workers' compensation supplemental medical fee schedule" means the schedule adopted and as may be amended by the director of labor and industrial relations for workers' compensation cases under chapter 386, establishing fees and frequency of treatment guidelines.* References in the workers' compensation supplemental medical fee schedule to "the employer", "the director", and "the industrial injury", shall be respectively construed as references to "the insurer", "the commissioner", and "the injury covered by personal injury protection benefits" for purposes of this article.

(b) *The charges and frequency of treatment for services specified in section 431:10C–103.5(a),* except for emergency services provided within seventy-two hours following a motor vehicle accident resulting in injury, *shall not exceed the charges and frequency of treatment permissible under the workers' compensation supplemental medical fee schedule.* ... The commissioner may adopt administrative rules relating to fees or frequency of treatment for

injuries covered by personal injury projection benefits. If adopted, these administrative rules shall prevail to the extent that they are inconsistent with the workers' compensation supplemental medical fee schedule.

(Emphases added.)

On April 6, 2000, HPN moved for partial summary judgment on the ground that the HAR Title 12 Chapter 13 workers' compensation fee schedules controlled the reimbursements owed HPN's assignors at least through December 31, 1997.[13] The court denied HPN's motion but granted, *sua sponte,* summary judgment in favor of Defendants. On September 12, 2000, judgment in favor of Defendants and against HPN was filed. On October 2, 2000, HPN filed a notice of appeal.

## II.

On appeal, HPN appears to argue that the court erred: (1) in ignoring well-settled principles of statutory construction by deviating from the plain and unambiguous language of HRS § 431:10C–308.5, (2) in failing to construe HRS § 431:10C–308.5 as a "reference statute" and applying rules of statutory construction applicable to reference statutes, (3) in treating the adoption of HAR Title 12, chapter 15, for workers' compensation purposes, as an amendment to HAR Chapter 13, thereby incorporating an unintended fee schedule for no-fault purposes,[14] and (4) in

State. For purposes of this article, insurer includes reciprocal or inter-insurance exchanges."

11. HPN argues that "[b]eginning in 1993 and continuing at all times through May 30, 2000," insurance carriers were required to pay for services rendered by health care providers according to HAR Title 12 chapter 13, workers' compensation fee schedules.

12. Act 138 § 4 stated that "[t]his Act shall take effect upon its approval." The act was approved on May 30, 2000. Act 138, 2000 Session Laws of Hawai'i, at 271.

13. HPN's motion for partial summary judgment, states that "[t]his motion focuses on the period beginning in 1993 through December 31, 1997. The motion demonstrates that for this period of time there is no doubt that the defendant insurance companies were required to pay HPN's

assignors for no-fault services at the rates set forth in HAR Title 12, Chapter 13."

14. HRS § 1–25 states that "[w]henever reference is made to any portion of the Hawaii Revised Statutes or of any other law of the State, the reference applies to all *amendments* thereto." (Emphasis added). Insofar as Defendant Allstate argues that this court should apply HRS § 1–25 (1993), it is incorrect. HAR Title 12, chapter 13 was not amended, but repealed. Therefore, HRS § 1–25 is inapplicable.

The court orally ruled that the enactment of HAR Title 12, chapter 15 was an amendment to HRS § 431:10C–308.5. Although we conclude that the repeal of HAR Title 12, chapter 13 and the enactment of HAR Title 12, chapter 15 was not an amendment to HRS § 431:10C–308.5, this court may still affirm the court's order granting summary judgment against HPN. *See Agsalud v.*

failing to recognize that HRS § 431:10C–308.5(b) states that if there is an inconsistency between the workers' compensation fee schedule and the rules adopted by the commissioner, the commissioner's adopted rules should prevail.

### III.

On appeal,

[w]e review the circuit court's grant or denial of summary judgment *de novo.* The standard for granting a motion for summary judgment is settled: Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. A fact is material if proof of that fact would have the effect of establishing or refuting one of the essential elements of a cause of action or defense asserted by the parties. The evidence must be viewed in the light most favorable to the non-moving party. In other words, we must view all of the evidence and the inferences drawn therefrom in the light most favorable to the party opposing the motion.

*State Farm Auto. Ins. Co. v. Gepaya,* 103 Hawai'i 142, 145, 80 P.3d 321, 324 (2003) (citations omitted).

### IV.

First, HPN argues that "HRS § 431:10C–308.5 clearly sets forth the applicable fee schedule, and departure from its plain and unambiguous language cannot be justified." However, " 'when there is doubt, doubleness of meaning, or indistinctiveness or uncertainty of expression used in a statute an ambiguity exits.' " *Franks v. City & County of Honolulu,* 74 Haw. 328, 335, 843 P.2d 668, 672–73 (1993) (quoting *State v. Sylva,* 61 Haw. 385, 388, 605 P.2d 496, 498

(1980)). The language in HRS § 431:10C–308.5(a) stating that worker compensation schedules refer to "schedules adopted and as may be amended by the director" appears inconsistent with the express reference to HAR "sections 12–13–30, 12–13–35, 12–13–38, 12–13–39, 12–13–45, 12–13–85 and through 92, and 12–13–94," inasmuch as the power of the director to "adopt" schedules could negate the specific HAR provisions enumerated in the statute. Thus, an ambiguity as to the legislature's intent is present in the statute. "If statutory language is ambiguous or doubt exists as to its meaning, '[c]ourts may take legislative history into consideration in construing a statute.' " *Franks,* 74 Haw. at 341, 843 P.2d at 674 (quoting *Life of the Land v. City and County of Honolulu,* 61 Haw. 390, 447, 606 P.2d 866, 899 (1980)).

As stated previously, when the legislature enacted HRS § 431:10C–308.5(a) and (b) in 1992, it indicated that the statute "[e]stablish[ed] a medical fee schedule which limits charges and frequency of medical services and treatment *by adopting, by reference, the workers' compensation fee schedule and guidelines*[.]" [15] Sen. Conf. Comm. Rep. No. 161, in 1992 Senate Journal, at 826 (emphasis added). To reiterate, the legislature explained that "[m]edical cost containment . . . will be accomplished by adoption of a fee schedule modeled on the workers' compensation medical fee schedule." Hse. Stand. Comm. Rep. No. 1271–92, in 1992 House Journal, at 1391. The legislature, thus, adopted the workers' compensation fee schedule by reference in order to implement its intent to contain costs of motor vehicle insurance.

As undisputed by the parties, HAR Title 12, chapter 15 further reduces payments and hence costs in comparison with the schedule promulgated in HAR Title 12, chapter 13. In doing so, HAR Title 12, chapter 15 is consistent with the intent of HRS § 431:10C–308.5. However, HAR Title 12, chapter 13, allowing for higher payments was clearly in-

---

*Lee,* 66 Haw. 425, 430, 664 P.2d 734, 738 (1983) (reiterating the general rule that "[w]here the decision below is correct it must be affirmed by the appellate court though the lower tribunal gave the wrong reason for its action" (citation omitted)).

**15.** Although this language could be read to refer only to Title 12, chapter 13, which was in effect at the time, based on subsequent legislative history, the language in question was intended to refer to worker compensation schedules generally. *See* discussion, *infra.*

consistent with "the purposes and policies of the act[,]" after the adoption of HAR Title 12, chapter 15. *Franks,* 74 Haw. at 341, 843 P.2d at 674.

## V.

HPN points out, however, that the legislature did not modify the reference in HRS § 431:10C–308.5 to HAR Title 12 chapter 13 although the statute was twice subsequently amended in 1997 and 1998. But letters from the State Actuary [16] were submitted during the legislative debates on the 2000 amendment and explain that the 2000 bill "*removes the referenced sections commensurate with the original intent of the legislation.* These sections were not meant to apply indefinitely, but were included as reference to the sections that were applicable at the time of the passage of HB 100, CD 1 of 1997." [17] 2000 House Journal, at 711 (emphasis added).

According to the 2000 legislature, the 1992 bill amending HRS § 431:10C–308.5 was "designed to produce savings for Hawaii's motor vehicle insurance purchasers[ [18]].... *The basis of the savings was and is derived from the reference to the workers' compensation medical fee schedules 'adopted and as may be amended by the director* of labor and industrial relations for workers' compensation cases under chapter 386, establishing fees and frequency of treatment guidelines.'" *Id.* (emphasis added). While the 2000 amendments to HRS § 431:10C–308.5 deleted the references to the HAR Title 12, chapter 13 sections, the legislature retained the textual reference to workers' compensation fee schedules "as may be amended by the director of labor and industrial relations for workers' compensation cases under chapter 386, establishing fees and frequency of treatment guidelines."

■ In certain circumstances [19] this court may look to "subsequent legislative history ... to confirm its interpretation of an earlier statutory provision." *Macabio v. TIG Ins. Co.,* 87 Hawai'i 307, 317, 955 P.2d 100, 110 (1998). As expressed by the 2000 legislature, HRS § 431:10C–308.5 was not intended to permanently reference HAR Title 12, chapter 13. This subsequent legislative pronouncement is persuasive insofar as it is consistent with the original purpose of the statute as expressed by the 1992 legislature. The workers' compensation fee schedule was intended to help "produce savings for Hawaii's motor vehicle insurance purchasers" and "reduc[e] and stabliz[e] the soaring cost of motor vehicle insurance in this state." Sen. Conf. Comm. Rep. No. 161, in 1992 Senate Journal, at 825. Applying a costlier fee schedule, such as HAR Title 12 chapter 13, would not comport with this legislative intent. In light of the legislature's objective of containing no-fault insurance costs, it would be absurd to construe HRS § 431:10C–308.5 as permanently incorporating the sections from HAR Title 12, chapter 13.

## VI.

■ Second, HPN contends that HRS § 431:10C–308.5 was a "reference statute" and as such, "the rules of construction appli-

---

**16.** Representative Menor, speaking in support of the amendments to the bill regarding HRS § 431:10C–308, HB No. 2476, stated that "this measure will not result in any increased cost in auto insurance. The State Actuary has confirmed that there will be no cost increase." 2000 House Journal, at 710. Representative Menor submitted the letters received by the State Actuary from which this court quotes. 2000 House Journal, at 711.

**17.** The state actuary's reference to HB 100, CD 1 of 1997 is a reference to the 1997 amendment to the motor vehicle insurance law including HRS § 431:10C–308.5. This reference apparently is to the fact that sections of HAR Title 12, chapter 13, were still listed in the statute.

**18.** With regard to amendments to the no-fault insurance law, including the incorporation of the workers' compensation fee schedule, the legislature related that "[t]he purpose of this bill as received by your Committee is to amend the no-fault law with the intent of reducing and stabilizing the soaring cost of motor vehicle insurance in this state." Conf. Comm. Rep. No. 161, in 1992 Senate Journal, at 825. *See supra.*

**19.** It is important to note that "while arguments predicated upon subsequent [legislative] actions must be weighed with extreme care, they should not be rejected out of hand as a source that a court may consider in the search for legislative intent." *Andrus v. Shell Oil Co.,* 446 U.S. 657, 666 n. 8, 100 S.Ct. 1932, 64 L.Ed.2d 593 (1980).

cable [to it] require that the reference to HAR Title 12, Chapter 13 remain effective for no-fault purposes even after the repeal of that chapter for workers' compensation purposes." A "reference statute" refers to or incorporates by reference another statute or rule. *See Davis v. Quinn,* 43 Haw. 261, 266–67 (1959); *see also Knowles v. Holly,* 82 Wash.2d 694, 513 P.2d 18, 22 (1973) ("Reference statutes are those which refer to, and by reference adopt wholly or partially, preexisting statutes or which refer to other statutes and make them applicable to an existing subject of legislation."). HRS § 431:10C–308.5 was a reference statute insofar as it incorporated by reference specific provisions of the HAR.

However, "[t]he question whether one statute adopting provisions of another by reference will be affected by amendment or repeal of the adopted statute is one of legislative intent and purpose." *A.L. Campbell, Jr. v. T.D. Hunt,* 115 Ga.App. 682, 155 S.E.2d 682, 684 (1967). "In the absence of legislative intent ... resort must be had to rules of construction." *Union Cemetery v. City of Milwaukee,* 13 Wis.2d 64, 108 N.W.2d 180, 181 (1961). The common law rules of construction distinguish between specific and general references. *Id.*

> When the *adopting statute incorporates an earlier statute or a limited and a particular provision thereof by specific reference,* such incorporation takes the statute as it existed at the time of incorporation and *does not prospectively include subsequent modifications or a repeal of the incorporated statute or portions thereof.* However, when a *statute incorporates the general law on a particular subject,* the reference is construed to mean that such statute as it exists at the time of incorporation and at any given time thereafter is incorporated. Thus *a general reference adopts prospectively the future alterations and even the repeal of the incorporated law.*

*Id.* at 181–82 (internal citations omitted) (emphases added). The distinction between a general and specific reference, as the Wisconsin Supreme Court explained, "lies in the

manner of reference and what is incorporated." *Id.* at 182.

> A specific reference refers specifically to a particular statute by its title or section number and incorporates only a part of the law on a subject. A general reference refers generally to the law on a subject and incorporates the entire subject matter. *Id.*

HRS § 431:10C–308.5 did make specific reference to HAR §§ "12–13–30, 12–13–35, 12–13–38, 12–13–39, 12–12–45, 12–13–85 through 92, and 12–13–94." The statute also advises that the workers' compensation fee schedule "means the schedule adopted and as may be amended by the director[.]" This language is seemingly inconsistent with the construction of HRS § 431:10C–308.5 as a specific reference statute. If HRS § 431:10C–308.5 is interpreted as a specific reference statute, then a court would apply "the [referenced] statute as it exists at the time of incorporation." *Id.* However, the language embodying the director's power to adopt and amend a workers' compensation fee schedule is inconsistent with a construction of HRS § 431:10C–308.5 as a specific reference statute. The Tenth Circuit stated the general rule that

> [a] statute of specific reference incorporates the provision referred to from the statute as of the time of adoption without subsequent amendments, *unless the legislature has expressly or by strong implication shown its intention to incorporate subsequent amendments with the statute.* In the absence of such intention subsequent amendments of the referred statute will have no effect on the reference statute. Similarly, repeal of the statute referred to will have no effect on the reference statute unless the reference statute is repealed by implication with the referred statute.

*Curtis Ambulance of Florida, Inc. v. Bd. of County Comm'r of County of Shawnee, Kansas,* 811 F.2d 1371, 1378–79 (10th Cir.1987) (emphasis added) (quoting 2A Sutherland, Statutory Construction, § 51.08 (4th ed.1984)).

The legislature's apparent design that a workers' compensation fee schedule could be adopted and amended by the director, cannot

be harmoniously reconciled with the statutory construction rule that specific references, apply the referenced statute as it exists at the time of incorporation. Therefore, it would be illogical to conclude that the legislature would have in one phrase contemplated adoption of a workers' compensation fee schedule and changes thereto and then in the next phrase, intend to apply only the specific Title 12 chapter 13 provisions as they were at the time of incorporation.

Hence, although specific sections of HAR Title 12 chapter 13 are referred to, the expressed intent of the legislature compels us to construe the reference to workers' compensation fee schedules as a general one. *See Dir., Office of Workers' Compensation Programs v. Peabody Coal Co.*, 554 F.2d 310, 324 (7th Cir.1977) (determining that effect of a statute could render "facially specific references ... [to] operate as general legislative references"); *see also George Williams Coll. v. Village of Williams Bay*, 242 Wis. 311, 7 N.W.2d 891, 894 (1943) (holding that although law was referred to by specific section numbers, the legislature adopted the "general law" on the subject of sewer assessments"). These cases are analogous to this case.

In *Peabody Coal Co.*, the Seventh Circuit held that the Federal Coal Mine Health and Safety Act was "a general reference [statute] masquerading as a specific and descriptive reference." *Peabody Coal Co.*, 554 F.2d at 329. The Seventh Circuit reasoned that Congress did not intend the courts of appeals to exercise original jurisdiction over subrogation suits arising from black lung claims because "[i]n view of the normal distribution of trial and appellate responsibilities and in view of the complete absence of any legislative history demonstrating Congressional intent to assign basic trail responsibilities to the various courts of appeal, we are not inclined to so rule." *Id.* at 329–30. Thus although Congress "left unmodified the cross-referencing language ... at the very time it was assigning new letters to the subsections [referenced,]" the Seventh Circuit held that "the only realistic reading of the amended [statute] ... requires a substitution of the correct subsection letters." *Id.*

Similarly the Wisconsin Supreme Court held that a statute granting rights of appeal to a landowner was a general reference statute despite references to sections of a statute limiting appeal rights. *George Willams Coll.*, 7 N.W.2d at 894. That court determined that the "whole scheme of procedure used in the cities [allowing a landowner to appeal to circuit court] is clearly adopted." *Id.* Despite the fact that the 1919 amendment to the sewer statute incorporated a specific subchapter which did not contain a provision allowing for appeals to the circuit court, the Wisconsin court, relying on the revisor's note attached to the 1919 amendment and a subsequent amendment that referenced statutes that allowed for appeals, held that the landowner had the right to appeal a special assessment for construction of a sewer easement which he gave to a nearby village. *Id.*

A general reference construction of HRS § 431:10C–308.5 would be compatible with the legislature's continuing objective of "reduc[ing] and stabliz[ing] the soaring cost of motor vehicle insurance in this State." Conf. Comm. Rep. No. 161, in 1992 Senate Journal, at 825. A general reference construction would also adhere to the "establish[ment of] a medical fee schedule which limits charges and frequency of medical services and treatment by adopting, by reference, the workers' compensation fee schedule and guidelines[ ]" as they may be altered from time to time. *Id.* at 826, 7 N.W.2d 891. Finally, a general reference construction is consonant with the legislature's removal of any reference to the provisions in HAR Title 12, chapter 13, as indicative of the intent underlying the 1992 enactment of HRS § 431:10C–308.5, that the provision be treated as a general reference one.

Consequently, inasmuch as HRS § 431:10C–308.5 must be construed as generally referring to worker compensation fee schedules, we hold HAR Title 12 chapter 15 was the governing fee schedule under HRS § 431:10C–308.5 at the time of its adoption by the director.

## VII.

Lastly, HPN argues that "by statute, no-fault administrative rules adopted by the in-

surance commissioner, including HAR Title 12, Chapter 13, prevail over inconsistent changes to the workers' compensation schedules adopted by the Director of DLIR." HRS § 431:10C–308.5(b) states that "[t]he commissioner may adopt administrative rules relating to fees or frequency of treatment for injuries covered by personal injury protection benefits. If adopted, these administrative rules shall prevail to the extent that they are inconsistent with workers' compensation schedules." HPN observes that in 1993 the Insurance Commissioner adopted the workers' compensation fee schedule in HAR Title 12, chapter 13. Therefore, according to HPN, HAR Title 12, chapter 13 should prevail over inconsistent changes to the workers' compensation fee schedule adopted by the director. Inasmuch as we have construed HRS § 431:10C–308.5 as a general reference statute, it is manifest that the schedule in HAR Title 12, chapter 13 should not have been applied. As with HRS § 431:10C–308.5, it would be absurd to enforce administrative rules that were contrary to this premise.

While the commissioner did not amend the rules, he correctly enforced the schedule in HAR Title 12, chapter 15 as of January 1, 1996. In a 1995 memorandum to all motor vehicle insurers licensed in Hawai'i, the commissioner stated that "[p]ursuant to section 431:10C–308.5, HRS, no-fault benefits for medical and rehabilitative services are paid in accordance with the workers' compensation schedule as adopted and amended by the Director of Labor and Industrial Relations." The legislature, in enacting HRS § 431:10C–308.5 expressly relied upon the insurance commission efforts "to effectuate the intent of the legislature in enacting the various amendments included in this bill[.]" Conf. Comm. Rep. No. 161, in 1992 Senate Journal, at 826. Specifically, the legislature "emphasize[d] that the reforms offered by this bill ... are hinged upon a tenacious regulatory effort by the insurance commissioner to assess and monitor the effects of the reforms in stabilizing and further reducing motor vehicle insurance rates." *Id.* Under the circumstances, Title 12 chapter 15 was properly applied by insurers as of January 1, 1996.

## VIII.

Based on the foregoing, the September 12, 2000 judgment of the court is affirmed.